**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Harlan S. TROWER, Respondent.**

**No. SCBD 1912.**

Supreme Court of Oklahoma.

April 23, 1963.

D. L. Gotcher and Thomas R. Brett, Tulsa, for complainant.

Jack I. Gaither and John S. Athens, Tulsa, for respondent.

## PER CURIAM.

In this action we are called upon to review a proceeding, originally instigated on the 27th day of October, 1961, by the Tulsa County Bar Association against the respondent, which proceeding was formally adopted by the Oklahoma Bar Association as its own proceeding on November 9, 1961, by designation of the Tulsa County Grievance Committee as the Grievance Committee of the Oklahoma Bar Association, to hear the evidence of the case. The record reveals that in accordance with the rules creating, controlling and regulating the Oklahoma Bar Association, a copy of the complaint was furnished the respondent by registered mail on the 14th day of December, 1961, and that the case was set for trial, and hearings held in accordance with the rules, the respondent being present by his attorneys of record.

An examination of the transcript of proceedings and exhibits reflects that in four instances the respondent was employed as an attorney at law to represent certain individuals involved in automobile accidents. Three of the cases were settled without trial and the fourth case resulted in a judgment in favor of respondent's clients. The evidence is clear that shortly after receiving the funds from each settlement and the judgment, respondent made a settlement and division of the monetary proceeds of each case with his client, withholding from the amount delivered to the client sufficient funds to pay the various physicians involved for their services. These funds withheld by respondent were in various amounts ranging from $115.00 to $356.00 and involved five different accounts with doctors or clinics.

The record is plain that after settling with his client and withholding an amount in trust in each case to be paid to the treating doctors or clinics respondent in each case commingled said monies with his own personal funds and converted these monies to his own use and benefit for periods of time extending from 19 to 29 months. Restitution was not made until filing of formal disciplinary charges against the respondent and prior to the conclusion of the trial before the Grievance Committee. Such conduct by the respondent-attorney is clearly a violation of Canon 11 of the Canons of Professional Ethics (Tit. 5, Ch. 1, App. 3, O.S.1961) which provides in part as follows:

> "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be comingled with his own or used by him."

The record further reflects that the respondent had been employed by an insurance company to prosecute subrogation claims. The respondent experienced various degrees of success in collecting these claims, but as before he was remiss in disbursements and accounting to his clients. The insurance company was put to considerable trouble and effort to try and secure an accounting of the status of the accounts as well as the settlements effected and the proceeds therefrom. The first such demand was made by the company on the respondent February 24, 1961, and final settlement with the company was not made by respondent until February of 1962, and after several hearings had been held by the Grievance Committee in these disciplinary proceedings. The record amply supports the view that the funds which the respondent-attorney had collected on each of these subrogation claims had been commingled with his own

funds and converted to the use and benefit of respondent from the time of collection until final accounting was made.

In mitigation and extenuation it must be pointed out that during most of these periods, the respondent suffered serious financial difficulties and was having a considerable problem with alcoholism. In addition, respondent had other personal and family problems which were of such magnitude as to test severely the character and integrity of the strongest man.

But in spite of all sympathy and compassion that we might feel for the respondent, the facts still remain that it is not for the sake of the individual member of the legal profession, nor the Oklahoma Bar Association, that men and women are licensed to engage in the practice of law. It is for the benefit of the public. The welfare of the public and the administration of justice must take priority and first consideration in determining whether or not an individual attorney should be disciplined.

"Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards". See In re Bond, 1934, 168 Okl. 161, 31 P.2d 921, first syllabus by the Court. We have previously said in State ex rel. Dalney v. Ledbetter, 1927, 127 Okl. 85, 260 P. 454, 465, by adopting the language of our sister court in In re Mills, 1 Mich. 392, 395, "Should this court, after being officially advised that one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would, in my opinion, fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar, and the public, to see that a power which may be wielded for good or for evil, is not intrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us that no person shall be permitted to aid in the administration of justice whose character is tainted with corruption."

We, therefore, hold that the respondent be suspended indefinitely with the provision that at the end of two years from the date this judgment becomes final, he may apply for reinstatement by complying with the Rules of the Oklahoma Bar Association.

Recommendation approved as modified.