William Allen **VAUGHN**, Appellant,

v.

**BOARD OF BAR EXAMINERS FOR THE OKLAHOMA BAR ASSOCIATION**, Appellee.

SCBD No. 3454.

Supreme Court of Oklahoma.

July 19, 1988.

---

**6.** 5 O.S.1981 Ch. 1, App. 1–A.

**7.** Supra, note 1.

**8.** See *In the Matter of Essman,* 749 P.2d 103 (Okla.1987).

F.M. Schraeder, Tulsa, for appellant.

Patrick H. Kernan, Tulsa, for appellee.

HODGES, Justice.

William Allen Vaughn (applicant) seeks review of the September 23, 1987, decision of the Oklahoma Board of Bar Examiners (Board) which denied his application for admission to practice law following a Rule 11 hearing.[1] Upon consideration of events during the time Vaughn was employed as a high school teacher which involved two female students who were 14 years of age at the time, the Board found Vaughn "failed to establish that he had sufficient moral character, due respect for the law, and fitness to practice law as required by Rule 1, Section 1 of the Rules Governing Admission to the Practice of Law in the State of Oklahoma."

▪ "'Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but

1. Rule 11, Rules Governing Admission to Practice of Law in the State of Oklahoma, 5 O.S. Supp.1986, Ch. 1, App. 5.

it is equally essential afterwards.' " [2] The applicant seeking bar admission has the burden of proving good moral character and due respect for the law by showing sufficient evidence to establish a prima facie case.[3] The Board then has the opportunity to rebut such showing with evidence of bad moral character and lack of respect for the law.[4] This Court is serious about its responsibility to pass upon the qualifications of an applicant's good moral character, due respect for the law and ethical fitness to practice law. We owe this duty to the courts, the bar and the public to see that a power which may be wielded for good or for evil is not entrusted to incompetent or dishonest hands.[5] Evidence of an applicant's prior conduct may be considered in determining his ethical eligibility, so long as it is not unduly remote in time and hence reasonably relevant to show the present state of his character.[6]

In this proceeding to review the Board's determination that Vaughn failed to meet his burden of proving these qualifications to practice law, this Court will examine the entire record *de novo.*[7]

Vaughn's application in the present proceeding filed in December, 1986, was for the February, 1987, bar examination. This was Vaughn's fifth application to sit for the examination. This application as well as three prior applications revealed he had been charged in Tulsa County District Court with the offenses of Sodomy, Lewd Molestation and Second Degree Rape for acts which were alleged to have occurred in 1983. The criminal case was subsequently dismissed with prejudice at the State's request. The Board ultimately allowed Vaughn to take the exam; however, it withheld his scores pending his Rule 11

appeal regarding its finding that he was unfit for the practice of law in Oklahoma.

The sole issue presented in this case is whether Vaughn is ethically fit to seek bar admission. Vaughn argues the Board erroneously based its decision solely on the fact he was arrested for acts which allegedly occurred in 1983, five years prior to this application. He further asserts the Board failed to inquire into his entire life history, including pre-arrest and post-arrest history. He notes all charges against him were dismissed with prejudice at the State's request after the State had failed to show a prima facie case. He contends because the evidence in the criminal case against him was found insufficient, it is likewise insufficient to establish he committed the alleged act and is therefore ethically unfit. He argues inasmuch as the Board did not inquire into all aspects of his life, the Board failed to rebut Vaughn's evidence of good moral character demonstrated by his own testimony, testimony of two character witnesses, affidavits of fourteen persons including seven Oklahoma licensed attorneys, and other documentation. We are aware of Vaughn's academic and professional accomplishments in other fields. Nevertheless, these *per se* are irrelevant whether Vaughn is ethically fit for bar admission.[8]

In *State ex rel. Okl. Bar Ass'n v. Bradley,* 746 P.2d 1130, 1133 (Okla.1987), this Court quoted with approval from *Emslie v. State Bar of California,* 11 Cal.3d 210, 113 Cal.Rptr. 175, 520 P.2d 991, 998 (1974), wherein the California Supreme Court permitted its State Bar to investigate and base its disciplinary proceedings upon the same acts charged in a criminal action which had been dismissed inasmuch as the Bar is re-

---

**2.** *State v. Trower,* 381 P.2d 142, 144 (Okla.1963) (*quoting In re Bond,* 168 Okl. 161, 31 P.2d 921 (1934)).

**3.** Rule 11 (Section 7) provides:
   The burden of establishing eligibility for admission to the Bar of this state, to registration as a law student, or to take an examination, shall rest on the applicant at all stages of the proceedings."
*See also Appeal of Evinger,* 629 P.2d 363, 367 (Okla.1981).

**4.** *Evinger,* 629 P.2d at 367.

**5.** *Id.* (*citing State v. Trower,* 381 P.2d at 144).

**6.** *Application of Mailath,* 752 P.2d 803, 811 (Okla.1988).

**7.** *Id.* at 806.

**8.** *Id.* at 811.

quired to investigate any charge of serious misconduct against a Bar member. Following *Emslie,* this Court held in *Bradley* a deferred sentence is admissible as evidence in a disciplinary action that certain acts were committed.

Similarly, in *Application of Taylor,* 293 Or. 285, 647 P.2d 462, 464 (1982), it is stated:

> " '[A]cquittal in a criminal action cannot be deemed to be *res judicata* here upon any issue, for the purpose and scope of an inquiry to determine an applicant's character and fitness to become a member of the Bar are essentially different ... Conduct not descending to the level of guilt of the violation of a criminal statute may well present an insuperable obstacle to admission to the Bar if such conduct evinces a lack of that 'character and general fitness requisite for an attorney and counselor-at-law.' *Application of Cassidy,* 268 App.Div. 282, 287, 51 N.Y.S.2d 202, 206 (1944) [citations omitted], *adhered to* 270 App.Div. 1046, 63 N.Y.S.2d 840 (1946), *aff'd* 296 N.Y. 926, 73 N.E.2d 41 (1947)."

Vaughn does not dispute the Board is allowed to inquire into the facts surrounding the arrest. However, he claims the arrest or charge which resulted in dismissal does not *per se* establish he committed the alleged acts. An examination of the transcript of the proceeding reflects Vaughn invoked his privilege against self-incrimination under the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution [9] which applies to the States through the Fourteenth Amendment.[10] Although Vaughn was willing to testify about his life history when called as a witness by the attorney for the Board, he refused to answer any questions concerning his involvement with the two 14 year old female students under his claimed privilege against self-incrimination.

■ The Board asserts even if Vaughn were justified in invoking this privilege, an adverse inference from his refusal to testify is permissible where probative evidence is offered against him. In *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed. 574 (1967), the United States Supreme Court held the constitutional privilege against self-incrimination extends its protection to lawyers, forbidding the imposition of the sanction of disbarment as a penalty for remaining silent. Although some courts while recognizing that invocation of the privilege may not alone be a ground for discipline under *Spevack,* have allowed an inference to be drawn with regard to the issues pertaining to the grounds for discipline.[11] However, we need not address this argument in the present case inasmuch as any adverse inference drawn concerning Vaughn's silence would be merely repetitious of the abundant direct and competent testimony of the same tenor produced by the Board against Vaughn which was admitted without objection.[12] Thus, if it was error to permit an inference, such was harmless in light of other sufficient competent evidence. We find based on the weight of the evidence against Vaughn, the Board did not err in concluding Vaughn's present character is tainted.

■ The testimony from the preliminary hearing in the criminal case of the minor student alleged to have had sexual relations with Vaughn in 1983 reveals he sent her love letters, promised to marry her,

---

9. U.S. Const. amend. V provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself."

 The United States Supreme Court has held that the privilege against self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *Allen v. Illinois,* 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92

L.Ed.2d 926, 303–04 (1986) (*quoting Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984).

10. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

11. *See e.g., Disciplinary Proceedings Against Haberman,* 128 Wis.2d 390, 382 N.W.2d 439 (1986).

12. *Continental Oil Co. v. Ryan,* 392 P.2d 492, 500 (Okla.1964).

took her for lunch away from school in his car, took her home from school and at least once kissed her. In addition, he gave her his telephone number and address and suggested that she call him. After the girl moved from Tulsa to Skiatook, Oklahoma, at least two different weekends during October, 1983, he had sexual relations with her. The testimonies of Assistant District Attorney Kevin Leitch and Douglas Mann, attorney for the Tulsa School Board, corroborates the girl's version of the facts. Leitch stated the case was remanded for an additional supplemental preliminary hearing because the term sexual intercourse was insufficient to establish the element of penetration. Given the nature of the allegations, Vaughn's student, the primary witness, had a difficult experience testifying at the first hearing and was not willing to testify at a subsequent hearing. Thus, the State dismissed the case.

After Vaughn's relationship with this student he took advantage of another 14 year old female student. Debra Adkins, the mother of the second child, testified Vaughn had helped her daughter run away from home for an extended time. The daughter requested her parents not to speak to the school board concerning Vaughn's involvement with her. The evidence reflects Vaughn employed the same means to seduce this child as he did in the former relationship. He wrote her love notes and promised her marriage. Whether he actually had sexual relations with her is disputed; although one witness, a teacher from Vaughn's school, saw Vaughn and the girl at a motel coffee shop in Moore, Oklahoma, early in the morning several weeks after she had run away from home.

In March, 1984, Vaughn was terminated as a teacher from the Tulsa Public Schools on the grounds of immorality, acts involving moral turpitude, imcompetency and willful neglect of duty arising out of the incidents with the two girls.

The evidence produced against Vaughn demonstrates Vaughn did not possess the ethical fitness at the time of the application for admission to the Bar. We do not perceive Vaughn as having been rehabilitated in view of the lack of any evidence concerning rehabilitation. *Application of Mailath*, 752 P.2d 803, 812 (Okla.1988). Vaughn's two character witnesses were not familiar with the incidents in 1983 and 1984. Dr. Richard Reinking testified on cross-examination his opinion concerning Vaughn's good moral fitness would be affected if the allegations in the criminal charge were proved to be true. The other witness, Kim Boyles, did not view as improper a 28 year old man dating a 14 year old girl. Vaughn's 14 supporting affidavits were admittedly prepared by his attorney, one form for attorneys and one for other persons. The affidavits do not reflect whether the affiants were aware of Vaughn's involvement with his two 14 year old female students.

It has been said "a teacher ... in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under her [his] care and protection." *Board of Education of City of Los Angeles v. Swan*, 41 Cal.2d 546, 552, 261 P.2d 261, 265 (1953) (citing Voorhees, The Law of Public Schools, sec. 62, p. 136). The teaching profession, not unlike the legal profession, imposes a code of ethics upon its members. When a teacher in the public schools engages in sexually provocative or exploitive conduct with his/her minor students such conduct constitutes immorality and warrants his/her dismissal or the denial or revocation of his/her teaching certificate. *Board of Trustees v. Stubblefield*, 16 Cal. App.3d 820, 94 Cal.Rptr. 318 (1971); *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267 (1976); *Denton v. South Kitsap School Dist.*, 10 Wash.App. 69, 516 P.2d 1080 (1973). It is obvious such conduct adversely affects the teacher-student relationship and the school district.

In view of Vaughn's romantic and sexual involvement with his minor female students while in the capacity as their teacher, we find his ethical value system deplorable. Vaughn has failed to demonstrate personal as well as professional ethics which are both imperative for bar admission.

In the best interest of the public, the conclusion of the Board of Bar Examiners is affirmed and Vaughn's application for admission to the Oklahoma Bar is denied for lack of ethical qualifications.

All the Justices concur.