2000 OK CIV APP 103

**Kathy ANDREWS, Plaintiff/Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 57, Defendant/Appellee.**

**No. 93,255.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 11, 2000.

Justin LaMunyon, Faulkner Law Firm, Enid, Oklahoma, for Plaintiff/Appellant.

Mark S. Rains, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendant/Appellee.

BUETTNER, Judge:

¶ 1 Appellant Kathy Andrews was terminated from her employment as a career teacher on the ground of moral turpitude. After trial *de novo*, the trial court found that Andrews had a romantic type of relationship with a minor student which violated the student/teacher relationship to an extent and degree that the violation constituted moral turpitude. The court granted judgment in favor of Independent School District No. 57 (Enid School District). We affirm.

¶ 2 Andrews was a special education teacher at Waller Junior High School in Enid, Oklahoma. The student had attended Waller, but had never been one of Andrews' students. At the time of trial, the student was seventeen and attending Enid High School. Andrews had been warned by the student's parents' lawyer and her school administrators not to have contact with the minor. In his letter to the School Board, the superintendent stated:

> My recommendation for dismissal is based on the following facts. On Tuesday, October 27, 1998 she [Andrews] made improper contact with a student as verified by the Enid Police Department. She and this student were found at her residence. The Police report indicates the time of 11:38 a.m. Prior to this incident she was advised by the school administration to no longer make contact with the student. She also had received a letter from the

student's parents' attorney directing her to make no further "telephonic communication, verbal communication, electronic or written communication" with the student. She was also directed by this letter to "avoid any face-to-fact contact" with the student and to "discourage this student from any further contact" with her. There is evidence that she made other prior contact with this student and of public hugging and kissing between the teacher and student. She also violated school and district policies with this relationship and leaving school on Tuesday, October 27, 1998 without checking out of the office.

Andrews received a copy of this letter. There is no allegation that the Teachers Due Process Act of 1990 was in any way violated or flawed. 70 O.S.1991 § 6–101.20 et seq.[1]

### Procedure and Standard of Review

¶ 3 Although the teacher whose employment is terminated becomes the plaintiff upon the filing for trial *de novo*, the teacher does not have the burden of proving that the termination was erroneous. The burden of proof rests with defendant to show that the statutory grounds for termination or non reemployment are met. The trial is not a review of the administrative procedure. Because the Teachers Due Process Act statutorily modifies the common law at-will employment doctrine, we review the findings of fact of the trial court as if it were a law action tried to the court and give those findings of fact the same great deference we give those rendered by a jury.

### Facts

¶ 4 The boy's mother surreptitiously installed a recording device on an extension telephone located in the family house. She recorded conversations between her son and Andrews on at least three days. A transcript of the conversations as well as the

1. 70 O.S.1991 § 6–101.27(D): Except as otherwise provided specifically in this section, the law generally applicable to civil suits filed in district court shall apply to the proceedings for trial de novo under this section. At the trial de novo the standard of proof shall be by the preponderance of the evidence and the burden of proof shall be on the district superintendent or designee, as representative of the local board of education, to establish de novo that the teacher's dismissal or nonre-employment is warranted. The trial de novo shall proceed as a nonjury trial before the court....

tapes, were admitted into evidence. Witnesses testified that the minor would often visit Andrews' classroom. He was observed massaging her shoulders. Another student testified that Andrews discussed the relative penis sizes of the two teenaged boys. There was testimony that the student and Andrews were seen kissing. An unidentified person called "Sir" had warned Andrews of the wiretapping and that the boy's family was pushing for a charge against her of indecent liberties with a minor. Nonetheless, Andrews met the student and took him to her home. When the police arrived with the boy's father, who had been alerted by his private investigator that the two had entered the home but not emerged, Andrews at first denied that he was there.

¶ 5 Andrews and the boy consistently denied any wrong or bad behavior, or improper relationship between them. A rebuttal witness testified through deposition of a sexual relationship between him and Andrews which occurred when he was fourteen and fifteen years old, approximately fifteen years before the trial of the cause at hand.

### Issues and Discussion

■ ¶ 6 Andrews first contends that the trial court erred when it ruled that the interceptions of the telephone conversations did not violate the Oklahoma Security of Communications Act, 13 O.S.1991 § 176.1 et seq. and the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 et seq. Andrews testified that the voices on the tapes were hers and the student's. When Enid Schools moved for admission of the tapes, Andrews objected because she had already admitted having some conversations with the student. The court asked then whether there were objections to the admission into evidence of the tapes and Andrews' lawyer inquired:

Mr. LaMunyon: Being played?

The Court:—— into evidence?

Mr. LaMunyon: To be played?

The Court: No, be admitted into evidence.

Mr. LaMunyon: No.

The Court: As part of the record. Tapes will be admitted.

¶ 7 A foundation was laid which the court accepted through the testimony of the boy's mother. The tapes contained information relevant to proving the statutory ground for termination, that is, moral turpitude. Andrews waived any objection to their admission. There is no error on this account.[2]

■ ¶ 8 Next, Andrews argues that her due process rights were violated when the trial court allowed evidence beyond the scope of the issues framed by the notice of termination. The notice, however, alleged facts beyond the October 27, 1998 transgressions. She was put on notice that the School District had information of prior contact with the student and with their public hugging and kissing. The court's admission of evidence concerning her behavior with the minor was within scope of the notice.

■■ ¶ 9 She also addresses her behavior as it relates to moral turpitude. "It has been said 'a teacher ... in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under her [his] care and protection.'" *Vaughn v. Board of Bar Examiners for the Oklahoma Bar Association,* 1988 OK 87, 759 P.2d 1026, 1030, citing *Board of Education of City of Los Angeles v. Swan,* 41 Cal.2d 546, 552, 261 P.2d 261, 265 (1953). " The teaching profession, not unlike the legal profession, imposes a code of ethics upon its members. When a teacher in the public schools engages in sexually provocative or exploitive conduct with his/her minor students such conduct constitutes immorality and warrants his/her dismissal or the denial or revocation of his/her teaching certificate." *Id.* at 1030. Vaughn was denied admission to the Oklahoma State Bar after a hearing concerning his moral fitness to be admitted to the bar. He had been discharged from his teaching position based on two incidences with fourteen year old female students. The first girl, with whom he allegedly had sexual relations, was allegedly seduced by the love

---

2. The exceptions to the rule that wiretapping of nonconsenting parties is inadmissible as evidence need not be explored in this case because of the waiver of objection.

letters he sent her and his promise of marriage. He took her to lunch away from school in his car, took her home from school, and at least once kissed her. He gave her his telephone number and address and suggested she call him. The second girl was also seduced in the same manner although the evidence of a sexual relationship was disputed. He helped her run away from home for an extended period. She asked her parents not to speak to the school board about his behavior with her. Vaughn was dismissed from his teacher position on the grounds of immorality, acts involving moral turpitude, incompetency, and willful neglect of duty.

■ ¶ 10 In the case at hand, although there was no evidence of a mature sexual relationship, the record is clear that there was a romantic relationship between the thirty-nine year old teacher and the seventeen year old boy which had endured for a couple of years. "Moral turpitude broadly defined is any conduct contrary to justice, honesty, and good morals. Moral turpitude implies something immoral in itself regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute determines the moral turpitude. The elements of intent and knowledge are regarded as important, and if the wrong is unintentional or if the act is made improper by statute without regard to the mental element, it is not moral turpitude." *Kelley v. City of Tulsa,* 1977 OK 160, 569 P.2d 455, 457. A teacher having a romantic relationship with a minor student is contrary to good morals.

■ ¶ 11 For her third contention of error, Andrews states that the trial court erred when it allowed the admission of the hand-written notes of Richard Moore. Richard Moore observed one of the kissing incidents. He was not a licensed private investigator but worked for the investigator as a skip tracer. The document was admitted under the business records exception to the hearsay rule. Even if the document were

admitted erroneously, the evidence is cumulative and any error would consequently be harmless. Another witness who testified to observing the minor enter Andrews' van and who saw them kiss was a Garfield County Court Reporter. The trial court stated: "The Court accepts as credible evidence the testimony of Mary Worth, an officer of this Court, who observed two individuals which she identified as Kathy Andrews and Tyler Bolt. They met and they kissed in the front seat of Kathy Andrews' teal van." Andrews claims that the court gave undue credibility to Mrs. Worth's testimony because of her position as an officer of the court. The allegation is unfounded.[3] "The credibility of the various witnesses and weight and value to be given to their testimony is for the jury or for the trial court on waiver of a jury, and conclusions there reached will not be disturbed on appeal, unless appearing clearly to be based upon caprice or to be without any reasonable foundation." *Givens v. Western Paving Co.,* 1953 OK 242, 261 P.2d 450, 451.

■ ¶ 12 On rebuttal, the court admitted deposition testimony of a man who testified that some fifteen years earlier he, while a teen-aged student, had a sexual affair with Andrews. The testimony was admitted for the purpose of impeaching the credibility of Andrews who had denied having improper relations with minors. The court stated that credibility of all the witnesses was a vitally important job for the proper determination of the case. After the deposition was read into evidence, Andrews objected because it was too removed in time for relevance. Andrews was not surprised by the deposition testimony. The first time Enid Schools attempted to lay its "credibility" foundation, it asked Andrews whether she had had improper relations with a sixteen year old. She answered no. At the attempted introduction of the deposition, the court struck the deposition after it became clear that the boy was under the age of sixteen. She was recalled and asked whether she had ever had improper relations with any student under the age

---

3. Andrews also asserts that the court improperly shifted the burden to her to disprove Mrs. Worth's testimony. After Mrs. Worth's testimony, Andrews had the opportunity to cross-examine and/or rebut the testimony or impeach Mrs. Worth's credibility. This is the usual course of a trial.

of eighteen. Upon her answer of "no," Enid Schools introduced the deposition as a proper attack on her credibility. The fact that the incident was fifteen years in the past does not diminish its use as a weapon for impeaching credibility. We find no abuse of discretion under the facts of this case.

¶13 Andrews claims that allowing Enid Schools to recall her to set up the rebuttal testimony was erroneous. However, a "trial court has great latitude concerning the practical conduct of a trial and an appellate court will not reverse unless a clearly erroneous conclusion or judgment is made." *Calvert v. J.B. Hunt Transport, Inc.*, 1993 OK CIV APP 88, 856 P.2d 1011, 1013.

¶14 For the reasons stated, we AFFIRM.

¶15 CARL B. JONES, P.J., and GARRETT, J., concur.