# IN THE MATTER OF THE APPLICATION OF DENNIS JOSEPH SHEA FOR ADMISSION TO THE VIRGIN ISLANDS BAR

S. Ct. BA. No. 2011-0115

Supreme Court of the Virgin Islands

August 30, 2013

DENNIS JOSEPH SHEA, Santa Barbara, CA, *Pro se*.

MARIA T. HODGE, ESQ., Hodge & Francois, St. Thomas, USVI, *Attorney for Committee of Bar Examiner*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(August 30, 2013)

PER CURIAM. This matter comes before the Court pursuant to an Application for Admission to the Virgin Islands Bar filed by Dennis Joseph Shea, an attorney admitted to the practice of law in California, Rhode Island, and Massachusetts, and formerly a member of the New Hampshire Bar. For the following reasons, we deny the application because Shea has not met his burden of proving that he is a person of good moral character.

## I. BACKGROUND

Shea sat for, and successfully passed, the July 2011 administration of the Virgin Islands Bar Examination. On December 19, 2011, the National Conference of Bar Examiners transmitted its Character and Fitness Report, and the Chair of the Virgin Islands Committee of Bar Examiners personally interviewed Shea on May 9, 2012. At the conclusion of the interview, the Committee requested that Shea provide additional materials relevant to its inquiry into whether he is "[a] person of good moral character." V.I.S.CT.R. 204(d)(3). Ultimately, the Committee notified Shea, by letter dated January 22, 2013, that it would convene a due process hearing on March 8, 2013. At the hearing, members of the

Committee questioned Shea about three areas of concern: (1) a sexual relationship with a client; (2) unpaid and delinquent federal and California income taxes; and (3) the abrupt closure of his California law office after his decision to move to Florida. In addition to responding to the Committee's inquiries, Shea testified on his own behalf.

On May 2, 2013, the Committee filed its Report and Recommendations with this Court. The Committee noted that Shea testified at the March 8, 2013 hearing that he began a sexual relationship with a client after the attorney-client relationship commenced. According to Shea, the client was a "gold digger" who seduced him in order to avoid paying a fee for his representation. Eventually, the client sued Shea, alleging, among other things, that he raped and falsely imprisoned her. Although that lawsuit terminated in Shea's favor, the California Bar opened an investigation into his conduct. While Shea testified that his conduct did not violate California law, he acknowledged that it violated Rule 1.8(j) of the American Bar Association's Model Rules of Professional Conduct.

The Committee further noted that Shea admitted to having approximately $212,000 in unpaid federal income taxes for the 2004 through 2007 tax years, and also owed the State of California approximately $14,000 in taxes for the 2005 through 2007 tax years. Although Shea attributed his failure to pay taxes due to paying college tuition for his children, the Committee found this testimony not credible because, upon questioning by a Committee member, Shea admitted that, in the 2004 tax year, he had enough funds available to pay both tuition and taxes. The Committee also noted that while Shea testified to paying his current taxes, he also stated that he did not intend to pay the overdue federal taxes. As to the closure of Shea's California law practice, the Committee observed that Shea admitted to making no prior arrangements before closing his office, or even notifying his clients. Based on these findings, a majority of the Committee determined that Shea failed to establish, by clear and convincing evidence, that he is a person of good moral character, and thus recommended that this Court deny his application for admission.

This Court, in a May 7, 2013 Order, established deadlines for Shea and the Committee to file briefs as to whether this Court should accept the Committee's Report. Shea timely filed his principal brief on July 9, 2013. However, three days later, Shea filed an addendum to his application, disclosing, for the first time, that a former client had filed a grievance

against him with the California Bar because Shea never filed a bankruptcy petition on his behalf, nor returned his file or refunded any portion of his fee. The grievance further alleged that Shea told the client that he moved to Florida and simply recommended that another California attorney represent him. Notably, the California Bar had informed Shea of the grievance on March 13, 2013, and closed the matter without prejudice on May 13, 2013, after Shea returned all original documents to the client. In addition to defending its May 2, 2013 Report and Recommendations, the Committee, in its July 25, 2013 brief, argues that Shea's apparently willful decision to delay disclosure of the grievance reflects adversely on his honesty and candor. Shea timely filed his reply brief on August 15, 2013, thus rendering this matter ripe for decision.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

This Court has exclusive jurisdiction to regulate admission to the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e); *In re Application of Payton*, S. Ct. BA. No. 2007-0146, 2009 V.I. Supreme LEXIS 17, at *6 (V.I. Mar. 20, 2009) (unpublished). "A bar applicant bears the burden of establishing his or her moral qualifications by clear and convincing evidence." *In re Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008) (citing V.I.S.CT.R. 203(h)(3) and *V.I. Bar v. Brusch*, 49 V.I. 409, 412 (V.I. 2008)). "Although we accord some deference to the Committee's finding of fact, it is ultimately this Court's responsibility to determine whether an applicant should be admitted to the VI. Bar," and thus "[w]e are not bound by the Committee's recommendation" and instead "review the record de novo." *Id*. And while "character examination is subjective in nature, we are guided in our examination of character by the American Bar Association Model Rules of Professional Conduct." *Id*. (citing V.I.S.CT.R. 203(a)). Moreover, "any doubt is resolved in favor of denying admission in order to protect the public." *Id*. (citing *In re Covington*, 334 Ore. 376, 50 P.3d 233, 235 (2002)).

Applying this standard, we agree with the Committee that Shea has not met his burden of establishing that he has the good moral character necessary to practice law in the Virgin Islands.

### B. Sexual Relationship with Client

As noted above, Shea has never denied that he engaged in a sexual relationship with a client after the attorney-client relationship

commenced. In his principal brief, Shea responds to the Committee's Report by stating that his "most important 'argument' is one of fact," and "[t]hat fact is that the State Bar of California thoroughly investigated the grievance filed by [the client], and concluded that the facts did not warrant opening a disciplinary proceeding of any type." (Appellant's Br. 7.) Moreover, Shea states that he finds it "astonishing" that "[t]he Committee's Report does not even mention this." (Appellant's Br. 7.)

■ Shea fails to recognize that California law — like Virgin Islands law, *see* V.I.S.CT.R. 207.4.4 — provides that the *State Bar* bears the burden of proving that an attorney engaged in ethical misconduct by clear and convincing evidence. *In re Petilla*, 4 Cal. State Bar Ct. Rptr. 231, 237 (Cal. Bar. Ct. 2001). In contrast, in this proceeding, it is *Shea* who bears the burden of proving, by clear and convincing evidence, that he possessed sufficient moral character to warrant admission to the Virgin Islands Bar. *Coggin*, 49 V.I. at 436. Given these divergent burdens of proof, the Committee correctly recognized that the fact that the California Bar chose not to prosecute Shea has no preclusive effect on this proceeding. *Cf. Vaughn v. Bd. of Bar Examiners*, 1988 OK 87, 759 P.2d 1026, 1028-29 (1988) (rejecting argument that dismissal of criminal charges with prejudice precludes relying on same underlying conduct as basis for denying bar admission on character and fitness grounds) (citing *Emslie v. State Bar of Cal.*, 11 Cal. 3d 210, 113 Cal. Rptr. 175, 520 P.2d 991, 998 (1974)).

Shea devotes a substantial portion of his principal brief to highlighting the differences between California ethical rules and the ABA Model Rules of Professional Conduct with regard to sexual relationships with clients. According to Shea, California law permits attorneys to initiate sexual relationships with their clients under certain specified circumstances. While Shea concedes that ABA Model Rule 1.8(j) establishes a *per se* prohibition on starting a new sexual relationship with a client by providing that " [a] lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced," and recognizes that this Court has adopted the ABA Model Rules to govern the conduct of members of

the Virgin Islands Bar,[1] he argues that the choice of law provisions found in ABA Model Rule 8.5(b)(1)-(2)[2] require applying California ethical rules.

 Again, Shea misapprehends the nature of the present proceedings. Had Shea been a member of the Virgin Islands Bar at the time he engaged in his sexual relationship with his California client while residing in California, it may very well be the case that the choice of law provisions would dictate applying California ethical rules rather than ABA Model Rule 1.8(j). But Shea is not a Virgin Islands attorney, and this is not a disciplinary proceeding; this matter is before the Court because Shea seeks admission to the Virgin Islands Bar, and must prove, by clear and convincing evidence, his moral character as required by Supreme Court Rule 204(d)(3). We turn to the ABA Rules not because Virgin Islands ethical rules actually governed Shea's conduct in California, but because the ABA Rules "guide[]" us in our inquiry as to whether he is fit to practice law in our community. *Coggin*, 49 V.I. at 436. We turn to the ABA Rules not necessarily as a result of this Court adopting them to govern the conduct of Virgin Islands attorneys, but because "[t]hese Rules embody basic ethical and professional precepts; they are fundamental norms that control the professional and personal behavior of those who as attorneys undertake to be officers of the court." *In re Matthews*, 94 N.J. 59, 462 A.2d 165, 174 (1983). The ABA Rules even predate the existence of this Court, and "reflect decades of tradition, experience and continuous careful consideration of the essential and indispensable ingredients that constitute the professional responsibility of attorneys." *Id.*

---

[1] *See* V.I.S.CT.R. 203(a) ("The Supreme Court, in furtherance of its inherent and statutory powers and responsibility to supervise the conduct of all attorneys who are admitted to practice before it, hereby adopts the ABA's Rules of Professional Conduct and Rules of Disciplinary Enforcement, superseding all of its other rules pertaining to disciplinary enforcement heretofore promulgated.").

[2] "In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows: (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and (2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur." MODEL R. PROF'L COND. 8.5(b).

■ Importantly, this Court has never adopted a per se rule that an applicant who has violated the ABA Rules lacks the requisite moral character for admission; the fact that an applicant "has engaged in past misconduct is probative of his character and fitness," but "is not dispositive." *Bd. of Law Examiners v. Stevens*, 868 S.W.2d 773, 780-81 (Tex. 1994). This is because, in a character and fitness review, "we focus our review on the applicant's present moral character," and consider "past misconduct because it gives us insight into the applicant's current character." *Coggin*, 49 VI. at 437 (citing *In re Hamm*, 211 Ariz. 458, 123 P.3d 652, 657 (2005)). In other words, we consider past violations of the ABA Rules only to the extent the applicant's prior conduct illustrates a negative character trait that may result in the applicant harming a client or violating ethical rules if granted a license to practice law in the Virgin Islands. *Stevens*, 868 S.W.2d at 781.

■ ■ Applying this standard, we conclude that Shea's prior sexual relationship with his client establishes poor judgment, even if it was permissible under California law. *Cf. In re Stern*, 403 Md. 615, 943 A.2d 1247, 1254 (Md. 2008) (finding that applicant's relationship with girl, which began when applicant was 25 or 26 years old and neighbor was 15 years old and continued for "many years" into her adulthood, adversely reflected on his character and fitness due to poor judgment in initiating such a relationship). Shea cites to this Court's decision in *In re Application of Campbell*, S. Ct. BA. No. 2009-0230, 2011 V.I. Supreme LEXIS 28 (V.I. Mar. 3, 2011) (unpublished), for the proposition that his consensual sexual relationship with his client is not an act of moral turpitude or otherwise should not impact his admission to the Virgin Islands Bar. What Shea ignores, however, is that the *Campbell* matter did not involve a consensual sexual relationship between an attorney and a client; it pertained to an applicant's failure to report, to his supervisor, a consensual sexual relationship between himself and a bailiff while serving as a judge. While an attorney may be disciplined for sexual harassment or other non-consensual sexual advances on an employee, *see, e.g., People v. Lowery*, 894 P.2d 758, 760 (Colo. 1995), *Columbus Bar Ass'n v. Baker*, 72 Ohio St. 3d 21, 1995 Ohio 77, 647 N.E.2d 152, 152 (1995), the ABA Rules do not contain a *per se* prohibition on sexual relationships between an attorney and a subordinate employee. On the contrary, ABA Model Rule 1.8(j) unambiguously prohibits an attorney from participating in a sexual relationship with a client unless the sexual relationship predates

the attorney-client relationship. The rationale for this *per se* prohibition is clearly set forth in the comments to the rule:

> The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the attorney-client evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate informed consent, this Rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.

MODEL R. PROF'L CONDUCT 1.8 cmt. 17. The fact that the relationship between Shea and his client culminated in her suing him for rape and false imprisonment not only illustrates the dangers of such relationships, but provides strong evidence that Shea exercised poor judgment in initiating this particular relationship. Thus, we agree with the Committee that Shea's decision to start a sexual relationship with his client reflects adversely on his fitness to practice law in the Virgin Islands.

### C. Delinquent Taxes

Had the sexual relationship between Shea and his client constituted the sole question as to his moral character, we might agree that it, standing alone, might not necessarily warrant denial of his application. But as the Committee notes in its May 2, 2013 Report, Shea admitted to owing approximately $226,000 in unpaid federal and state income taxes for the 2004 through 2007 tax years, and testified that he was unlikely to ever

repay his outstanding debt to the federal government. And while Shea attempted to mitigate his failure to pay by attributing it to tuition payments for his children, he admitted, after follow-up questioning by the Committee, that his $80,000 in unpaid federal taxes for 2004 were not attributable solely to tuition. (Hearing Tr. 50.)

In his principal brief, Shea again concedes his failure to pay taxes, although he disputes the amount of his outstanding debt.[3] However, Shea defends his conduct by attempting to distinguish between "tax evasion" and what he describes as "mere nonpayment of taxes." (Appellant's Br. 10.) According to Shea, the fact that he filed truthful income tax returns for the pertinent years, but simply chose not to pay the taxes due, renders his conduct less culpable.

■ We disagree. As the Committee notes in its brief, willful failure to pay federal income tax is a crime, even if a truthful tax return is timely filed. *See* 26 U.S.C. § 7203. And while Shea devotes substantial portions of both his principal and reply briefs addressing issues such as whether failure to pay taxes is a crime of moral turpitude or whether he knew non-payment of taxes constituted a crime as opposed to a civil wrong, this, too, is immaterial to our inquiry. *See Stevens*, 868 S.W.2d at 775 ("It would be small comfort to the public if the only ethical standard for admission to the Texas Bar were an absence of convictions involving serious crimes and crimes of moral turpitude. Rather than mere absence of gross misbehavior, bar admission affirmatively requires 'good moral character' and 'fitness' to practice law."). Notwithstanding his efforts to excuse his conduct, the fact remains that Shea refused to pay income taxes for a four year period — despite having the financial means to do so — and, to date, has not addressed his federal tax debt; on the contrary, Shea maintains that he has no intentions of ever paying that debt. Consequently, it is clear to this Court that Shea lacks "respect for and obedience to the laws of . . . the nation." *Coggin*, 49 V.I. at 437.

---

[3] In his principal brief, Shea contends that the Committee misrepresents the amount of income tax owed to California. According to Shea, $14,000 represents the amount he owed at the time of his initial application to the Virgin Islands Bar, and that as of the date he filed his principal brief, that amount stands at only $850 due to a payment plan he entered into with the state. (Appellant's Br. 11.) However, it is clear from context that the Committee is primarily concerned not with the present amount of the debt, but the fact that Shea did not pay California income taxes for a three year period.

## D. Closure of California Law Practice and Untimely Disclosure of Grievance

We also agree with the Committee that Shea's sudden, unannounced closure of his California law practice reflects adversely on his moral character. While Shea challenges the Committee's characterization of the closure as "abrupt," he testified that he simply "closed [his] office," "packed all [his] stuff in a truck," and "drove to Tallahassee," (Hearing Tr. 40), and responded in the affirmative when a Committee member asked him if he "basically shut down [his] office overnight and moved to Florida."[4](Hearing Tr. 47.)

Shea also contends in his principal brief that the record reflects that he did not abandon any of his clients when he closed his law practice. But while Shea provided testimony to this effect, the grievance one of his clients filed against him with the California Bar — which Shea did not disclose until July 12, 2013, approximately four months after the Bar notified him of the grievance and two months after the Committee issued its May 2, 2013 Report — demonstrates that this is simply not true. Shea testified that he "didn't have that much going at that time," only had "two or three bankruptcy cases," and that " [t]here was nothing [he] couldn't manage in winding down from a distance." (Hearing Tr. 46-47.) The grievant, however, alleged that Shea never filed a bankruptcy petition on his behalf, simply told him in January 2013 to hire a new lawyer without refunding any portion of his fee, and refused to return his file. Significantly, in his response to the California Bar's inquiry, Shea admitted that, during this period, he failed to respond to the client because he "had no office setup, and had no easy way to access the files on [his] server," and, in response to a request for a copy of his written retainer agreement, said that he could not find a paper or electronic version of the document, but "suspect[ed] that the original retainer agreement is in a banker's box in some materials files [he] left in a storage facility in Florida" after he eventually returned to California. (Appellee Br. 26.)

---

[4] For the first time in his reply brief, Shea challenges various aspects of the due process hearing, including the Committee's practice of asking him what he describes as "summary" or "gotcha" questions, including the question pertaining to whether he shut down his law office overnight. Because Shea has raised these issues for the first time in his reply brief, these arguments have been waived. *Payton*, 2009 V.I. Supreme LEXIS 17, at *11 n.3.

As the Committee correctly notes in its brief, Shea's own admissions to the California Bar raises serious questions as to whether he provided truthful testimony at the March 8, 2013 hearing. Moreover, the fact that Shea waited until July 12, 2013, to amend his application to disclose the grievance — despite being informed of it on March 13, 2013 — raises further doubts about his honesty and character. *See Campbell*, 2011 V.I. Supreme LEXIS 28, at *13-14. Significantly, we note that Shea did not disclose the grievance until *after* the California Bar notified him that it would close the matter without prejudice as a result of his decision to finally provide the client with a copy of his file.

### E. Suspension and Resignation from New Hampshire Bar

All of the above reasons, taken in the aggregate, provide this Court with more than sufficient grounds to deny Shea's application on character and fitness grounds. However, as the Committee noted in its May 2, 2013 Report, Shea had been admitted to practice law in New Hampshire, but was "administratively" suspended for non-payment of dues on November 1, 1995. According to the Committee, that suspension was lifted on May 31, 2011, on the condition that Shea resign from the New Hampshire Bar by June 30, 2011, which he ultimately did. We believe Shea's suspension, and subsequent resignation, further establish his unfitness to practice law in the Virgin Islands.

We have previously noted that an individual with sufficiently good moral character must possess a "respect for and obedience to the laws of the state and the nation and respect for the rights of others and for the judicial process." *Coggin*, 49 V.I. at 437. "[C]ourts considering the question uniformly have concluded that the inherent power of the judiciary to regulate the practice of law includes the authority to impose fees necessary to carry out the court's responsibilities in this area." *In re Attorney Discipline System*, 19 Cal. 4th 582, 79 Cal. Rptr. 2d 836, 967 P.2d 49, 55 (1998) (collecting cases). The New Hampshire Supreme Court is amongst these courts that have established a unified bar and mandated all attorneys admitted to practice before it to pay reasonable membership dues in order to support its State Bar. *In re Unification of New Hampshire Bar*, 109 N.H. 260, 248 A.2d 709, 713-14 (1968).

While the Committee characterizes Shea's approximately 16 year suspension from the New Hampshire Bar as "administrative," the rules of this Court do not distinguish between suspensions in such a way; simply

put, a suspension is a suspension. Although this Court has not yet been asked to discipline an attorney who has failed to pay bar dues in another jurisdiction or who has not satisfied another jurisdiction's continuing legal education ("CLE") requirements, we note that some jurisdictions, such as New York, regularly impose reciprocal discipline on New York attorneys who receive purportedly "administrative" suspensions for their failure to register, pay bar dues, or complete CLE credits mandated by other states. *See, e.g.*, *In re Gross*, 77 A.D.3d 10, 904 N.Y.S.2d 914, 915 (N.Y. App. Div. 2010) (ordering public reprimand for failure to remedy registration and CLE delinquencies that resulted in administrative suspension in other jurisdiction); *In re Jessup*, 51 A.D.3d 259, 854 N.Y.S.2d 513, 515 (N.Y. App. Div. 2008) (imposing non-administrative suspension in New York for registration and CLE non-compliance that resulted in administrative suspension in Ohio). The reason for this is clear: the failure to abide by valid registration, dues, and CLE requirements imposed by a sister state, and to promptly remedy those deficiencies, represents a flagrant disregard for the law of that jurisdiction.

Because the Committee did not focus on Shea's non-payment of dues, we do not know why he did not pay his dues, or why he refused to remedy the problem for 16 years. We do know, however, that the New Hampshire Supreme Court took the matter very seriously, as demonstrated by its treatment of his petition for reinstatement:

> In January 1995, Attorney Dennis Shea was suspended from the practice of law in New Hampshire for failure to pay bar dues. On February 22, 2011, Attorney Shea filed a petition for reinstatement and provided evidence to establish that he has paid the outstanding bar dues. In his petition, Attorney Shea stated that he is currently practicing law in California. He further stated that he does not intend to return to practice in New Hampshire and that he is seeking reinstatement so that he is considered a member of the bar in good standing.
>
> Attorney Shea's petition for reinstatement is granted on the condition that he submit his request to resign from the bar to the New Hampshire Bar Association by June 30, 2011. Attorney Shea shall file a copy of his request to resign with the court.
>
> If Attorney Shea does not submit his request to resign by June 30, 2011, this order may be vacated . . . .

*In re Shea*, ADM-2011-0034, slip op. at 1 (N.H. May 31, 2011) (unpublished). Given that Shea's reinstatement was granted — despite his payment of all outstanding bar dues — only on the explicit condition that he resign within one month, we cannot conclude that the New Hampshire Supreme Court viewed his disregard for its rules as a minor technical defect that could simply be ignored. And when viewed in conjunction with his willful refusal to pay his outstanding income taxes despite having the means to do so, Shea's failure to pay his New Hampshire bar dues or to remedy his suspension for 16 years represents further proof of a pattern of simply ignoring his financial and legal obligations to the government.

## III. CONCLUSION

Shea has failed to meet his burden of showing, by clear and convincing evidence, that he is a person of good moral character. Thus, we conclude that he is unfit to practice law in the Virgin Islands, and consequently deny his application for membership to the Virgin Islands Bar.