**IN THE MATTER OF THE MOTION TO PERMIT AND AUTHORIZE MICHAEL MOTYLINSKI, ESQUIRE AS AN ASSISTANT ATTORNEY GENERAL TO APPEAR IN THE SUPREME COURT OF THE VIRGIN ISLANDS AND ALL INFERIOR COURTS IN THE PERFORMANCE OF HIS OFFICIAL DUTIES**

**IN THE MATTER OF THE APPLICATION OF: MICHAEL MOTYLINSKI, FOR PRO HAC VICE ADMISSION TO THE VIRGIN ISLANDS BAR**

S. Ct. BA No. 2009-0220, S. Ct. BA. No. 2012-0106

Supreme Court of the Virgin Islands

February 25, 2014

621

622

623

624

MICHAEL MOTYLINSKI, St. Thomas, USVI, *Pro se.*

DELPHINE FARR JANEY, ESQ., Disciplinary Counsel, St. Thomas, USVI, *Attorney for Office of Disciplinary Counsel.*

SAMUEL T. GREY, ESQ., St. Croix, USVI, *Attorney for Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 25, 2014)

PER CURIAM. These matters return to the Court pursuant to a December 2, 2013 Memorandum Decision rendered by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC") in response to our earlier order referring the conduct of Michael Motylinski, a former specially admitted member of the Virgin Islands Bar and current applicant for *pro hac vice* admission, for an evidentiary hearing and issuance of non-binding recommendations. *In re Motylinski*, S. Ct. BA. Nos. 2009-0220, 2012-0106, 2013 V.I. Supreme LEXIS 10, at *10 (V.I. Mar. 14, 2013) (unpublished). For the following reasons, we accept the EGC's factual findings and legal conclusions as they pertain to Motylinski's

ethical violations, deny his application for *pro hac vice* admission, and impose, as a sanction, (1) a six-month stayed suspension as reciprocal discipline for misconduct found by the Supreme Court of Ohio; (2) a one-year suspension for additional misconduct in the Virgin Islands which was not the subject of the Ohio proceedings; and (3) a $1,000 fine and payment of costs.

## I. BACKGROUND

The facts of this case are largely undisputed. On July 6, 2009, the Virgin Islands Department of Justice filed a motion with this Court, docketed as S. Ct. BA. No. 2009-0220, requesting that we specially admit Motylinski as a member of the Virgin Islands Bar pursuant to Supreme Court Rule 202. In the motion, the Attorney General represented that Motylinski was admitted to practice law in Ohio and that he had been hired as an Assistant Attorney General. Motylinski, in an accompanying affidavit, dated July 1, 2009, acknowledged the limited nature of a special admission, in that, if granted, it would permit him "solely to practice law for, to represent and to appear for the People in all Courts of the U.S. Virgin Islands." (July 1, 2009 Aff. 1.) On the same day, the Attorney General provided this Court with a certificate of good standing issued by the Supreme Court of Ohio, certifying, in pertinent part, that

> Michael Motylinski was admitted to the practice of law in Ohio on November 10, 2003; has registered as an active attorney pursuant to the Supreme Court Rules for the Government of the Bar of Ohio; is in good standing with the Supreme Court of Ohio; and is entitled to practice law in this state.

(S. Ct. BA. No. 2009-0106, Ohio COGS 1.) Motylinski also completed a questionnaire used by the National Conference of Bar Examiners ("NCBE") to prepare a character and fitness report, which this Court received on July 9, 2009, and transmitted to the NCBE on July 13, 2009. In the NCBE questionnaire, Motylinski stated that he was currently employed as the Managing Partner of Motylinski & Associates in Broadview Heights, Ohio, and had served in the capacity since November 2003. On the last page of the document, Motylinski swore, in the presence of a notary public, that all his answers were truthful, and acknowledged that "[he] understand[s] that [he] should update [his] application during its pendency. . . ." (NCBE Ques. 17.)

626

Ultimately, this Court, in an October 19, 2009 Order, granted the motion for special admission, and the clerk administered the Oath of Office on October 22, 2009. During the approximately four months his special admission application remained pending, Motylinski never sought to amend the NCBE questionnaire or any of the other documents filed in support of the motion. On February 10, 2012, the Department of Justice notified this Court that Motylinski had resigned effective May 19, 2011, and this Court, in a February 14, 2012 Order, rescinded his special admission, *nunc pro tunc* to the date of separation. *See* V.I.S.CT.R. 202(c) ("An admission issued pursuant to this rule . . . shall terminate automatically when the person ceases to be employed by the petitioning agency or instrumentality of the Government of the Virgin Islands. . . ."). Shortly after leaving the Department of Justice, Motylinski accepted employment with Glacial Energy V.I., LLC, where he was initially assigned to the "Legal Department" and at various times possessed the job titles "Corporate Counsel" or "Staff Attorney."

On May 5, 2012, Adam Gusman, Esq., a duly admitted member of the Virgin Islands Bar also employed by Glacial Energy, filed a motion for this Court to admit Motylinski *pro hac vice* to represent Glacial Energy in *Sorber v. Glacial Energy V.I., LLC*, Super. Ct. Civ. No. 588/2010 (STT). This Court docketed the *pro hac vice* motion as S. Ct. BA. No. 2012-0106. As part of that matter, Motylinski also completed a *pro hac vice* questionnaire, which, among other things, asked him, "Have you ever been disbarred or suspended, from practicing law in any jurisdiction(s)?" to which Motylinski answered "No." (Pro Hac Vice Ques. 2.) Motylinski also swore, in the presence of a notary public, that he was required to "attach[] to this questionnaire, all Certificates of Good Standing, evidencing [his] bar membership in all jurisdictions admitted." (Pro Hac Vice Ques. 3.) In his motion, Gusman represented that Motylinski "is a member in good standing with the Supreme Court of Ohio," (Mot. 1), and the only certificate of good standing that accompanied his questionnaire was one issued by the Supreme Court of Ohio, stating that he is an active member of the Ohio Bar and entitled to practice law in Ohio. This Court, in an August 16, 2012 Order, granted the motion to admit Motylinski *pro hac vice*, but specified that his admission would be contingent on administration of the Oath of Office.

Although numerous months passed, Motylinski never executed the Oath, and thus his *pro hac vice* case remained open and pending in this

Court. This Court, in a February 12, 2013 Order issued in both S. Ct. BA. No. 2009-0220 and S. Ct. BA. No. 2012-0106, advised Motylinski and Gusman that it discovered a December 7, 2012 Opinion issued by the Supreme Court of Ohio suspending Motylinski from the Ohio Bar for six months as a sanction for several instances of ethical misconduct. In its decision, the Ohio Supreme Court set forth the following factual findings:

> The stipulated facts and testimony demonstrate that in April 2009 the New York law firm of Bond, Schoeneck & King, P.L.L.C., referred its client, Roth Industries, to Motylinski to handle a collection matter on a contingent-fee basis. The law firm forwarded to Motylinski a check in the amount of $125 for court costs, and on May 5, 2009, Motylinski filed a complaint in the Cuyahoga County Court of Common Pleas on behalf of Roth.
>
> In July 2009, Motylinski received an offer of employment in the Virgin Islands that he accepted. He subsequently moved out of the country on August 15, 2009, and changed the status of his license to practice law in Ohio to inactive on September 1, 2009. From August to September 2009, Motylinski did not respond to Bond, Schoeneck & King's numerous phone calls and e-mails regarding the status of Roth's case. It was not until Bond, Schoeneck & King demanded that Motylinski return Roth's file that Motylinski responded to any of the law firm's messages. At that time, Motylinski revealed that he was working in the Virgin Islands but did not disclose the status of his registration to practice law in Ohio.
>
> In November and December 2009, Motylinski continued to work on Roth's case, including transmitting a settlement offer and participating in a telephone pretrial conference with the court. Eventually, the court discovered that Motylinski was registered as inactive and, on December 21, 2009, dismissed Roth's case without prejudice because Motylinski was prohibited from practicing law. Motylinski did not advise Roth or Bond, Schoeneck & King that the case had been dismissed. Instead, Motylinski continued to attempt to negotiate a settlement for Roth until February 2010, when Bond, Schoeneck & King discovered Motylinski's inactive status and terminated his services.

*Disciplinary Counsel v. Motylinski*, 134 Ohio St. 3d 562, 2012 Ohio 5779, 983 N.E.2d 1314, 1316 (2012). The Ohio Supreme Court concluded that

Motylinski violated Ohio Rules of Professional Conduct 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), and 5.5(a) (unauthorized practice of law). The Ohio Supreme Court further found that while Motylinski lacked a prior history of discipline and cooperated with the disciplinary proceedings, "the evidence demonstrated that Motylinski did have a selfish and dishonest motive" since he "continued to work on Roth's collection case after becoming inactive because he wanted to collect a percentage of any settlement." *Id.* at 1317. Thus, the Ohio Supreme Court announced that it would "suspend Michael Motylinski from the practice of law for a period of six months," but that it would stay the suspension "on the condition that he pay Roth Industries $125 within 30 days." *Id.*

In our February 12, 2013 Order, this Court recognized that Motylinski never amended his *pro hac vice* application to alter his response to the "Have you ever been disbarred or suspended, from practicing law in any jurisdiction(s)?" question, or otherwise brought the Ohio Supreme Court's December 7, 2012 Opinion to our attention. Moreover, this Court observed that although his special admission had lapsed, the underlying ethical misconduct found by the Ohio Supreme Court occurred while Motylinski had been a specially admitted member of the Virgin Islands Bar, and that therefore Supreme Court Rule 203 required him to "promptly inform the clerk of this court of such action." V.I.S.CT.R. 203(c)(1). This Court also noted that the Ohio Supreme Court's factual findings, if true, may constitute ethical misconduct separate and apart from the violations found in the December 7, 2012 Opinion, since (1) Motylinski's special admission permitted him only to perform legal services for the Department of Justice; and (2) a Virgin Islands statute, 3 V.I.C. § 117, expressly prohibits Assistant Attorneys General from engaging in the private practice of law. Consequently, this Court vacated the August 16, 2012 Order granting the motion for *pro hac vice* admission and required Motylinski, Gusman, and the Office of Disciplinary Counsel to brief the pertinent legal issues.

In his response, Gusman denied having any knowledge of the Ohio Supreme Court's December 7, 2012 Opinion, and contended that Motylinski remained eligible for *pro hac vice* admission because his suspension had been stayed. Motylinski likewise argued that he had

technically never been suspended, but also challenged this Court's jurisdiction over him and contended that he did not engage in any ethical misconduct beyond that found by the Supreme Court of Ohio. Disciplinary Counsel, however, contended that this Court possessed jurisdiction over Motylinski by virtue of his pending *pro hac vice* application and the fact that the underlying misconduct occurred while he had been specially admitted. *See* V.I.S.Ct.R. 201(a)(4) (applicants for *pro hac vice* admission "shall be subject to the disciplinary and contempt jurisdiction of this Court"); V.I.S.Ct.R. 207.1.2(b)(1) ("A Respondent under these rules may be . . . any formerly admitted attorney with respect to acts committed prior to resignation . . . ."). As to the merits, Disciplinary Counsel contended that Motylinski had engaged in additional ethical misconduct that had not been addressed by the Ohio Supreme Court, and argued that Motylinski — who identified himself as Glacial Energy's "corporate counsel" in the response filed with this Court — was presently engaged in the unauthorized practice of law in the Virgin Islands in violation of 4 V.I.C. § 443.[1]

Shortly after Disciplinary Counsel filed this response, Gusman filed a "Notice of Withdrawal of *Pro Hac Vice* Application" on March 8, 2013, in which he stated that he disagreed with Disciplinary Counsel's analysis, but wished to withdraw the application "without prejudice to its renewal at a future date" and "without waiver of all arguments available to undersigned and Motylinski," due to the "uncertainty surrounding Motylinski's status in the territory." (Not. 1-2.) However, in a footnote to his filing, Gusman questioned Disciplinary Counsel's reliance on section 443, noting that the statute conflicted with the American Bar

---

[1] This statute provides, in pertinent part, as follows:

> Except as otherwise provided by law or rule of court, and excepting court personnel acting in the performance of their court duties, the unauthorized practice of law shall be deemed to mean the doing of any act by a person who is not a member in good standing of the Virgin Islands Bar Association for another person usually done by attorneys-at-law in the course of their profession, and shall include but not be limited to:
>
> the appearance, acting as the attorney-at-law, or representative of another person, firm or corporation, before any court, referee, department, commission, board, judicial person or body authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation and/or filing of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the same.

4 V.I.C. § 443(a).

Association's Model Rule of Professional Conduct 5.5(d)(1), and essentially argued that individuals not admitted to the Virgin Islands Bar could permissibly act as "corporate counsel" to a Virgin Islands company. On March 13, 2013, this Court denied Gusman's request, given that Gusman continued to maintain that no misconduct had occurred and the filing appeared calculated to avoid potential disciplinary proceedings against Motylinski and Gusman.

Ultimately, this Court, in a March 14, 2013 Order, deferred a decision on Motylinski's *pro hac vice* application pending Disciplinary Counsel's investigation, and referred the matter to the EGC to consider, on an expedited basis, "(1) whether this Court should adopt the findings of the Ohio Supreme Court and impose reciprocal discipline as to Motylinski pursuant to Supreme Court Rule 203(c); and (2) whether Motylinski or Gusman have committed any of the additional ethical violations alleged by Disciplinary Counsel." *In re Motylinski*, 2013 V.I. Supreme LEXIS 10, at *9.

After this Court issued its March 14, 2013 Order, the Office of Disciplinary Counsel continued to investigate Motylinski. As part of that investigation, Disciplinary Counsel discovered that Motylinski had been admitted to the California Bar on September 23, 2009, yet had (1) not amended his NCBE questionnaire to reflect that his status in California had changed from that of a bar applicant to an admitted attorney; (2) failed to transmit a certificate of good standing from the Supreme Court of California in conjunction with his special admission application; (3) failed to disclose his California admission on his *pro hac vice* questionnaire; and (4) failed to transmit a certificate of good standing from the Supreme Court of California in conjunction with his *pro hac vice* application. Similarly, Disciplinary Counsel discovered that Motylinski never amended his NCBE questionnaire to reflect that he commenced employment with the Department of Justice as an Assistant Attorney General in July 2009 — approximately four months *before* this Court granted the motion for his special admission — or that he switched from active to inactive status in Ohio on September 1, 2009. Additionally, Disciplinary Counsel ascertained that Motylinski had been on inactive status in California between July 27, 2010, and April 3, 2013, and that he was presently inactive in Ohio, indicating that he would not have been eligible to serve as Glacial Energy's in-house counsel even if Model Rule 5.5(d)(1) applied to the exclusion of section 443.

The EGC held a hearing on the matter on October 15, 2013, where Motylinski and Gusman served as the only witnesses. At the hearing, Motylinski testified that from May 2011 to October 2012 his title at Glacial Energy had, at various times, been "staff attorney" or "corporate counsel" while he served in the "Legal Department," and that in November 2012 he had been promoted to the "Director of International Tax" position in the "Finance Department," a position which he held until Glacial Energy terminated his employment on September 4, 2013.[2] Motylinski described his duties as "corporate counsel" and "staff attorney" as drafting contracts, supporting ongoing litigation, working with outside counsel, and providing responsive materials to regulatory agencies. During his testimony, Motylinski also acknowledged that he had been inactive in both Ohio and California throughout his entire tenure with the Department of Justice and when his employment with Glacial Energy commenced.

■ On December 12, 2013, the EGC filed its December 2, 2013 Memorandum Decision with this Court. In its decision, the EGC concluded that reciprocal discipline was warranted pursuant to Supreme Court Rule 203(c), and that Motylinski also engaged in other ethical misconduct independent of the misconduct found by the Ohio Supreme Court. Specifically, the EGC agreed with Disciplinary Counsel that Motylinski violated his ethical obligations by (1) repeatedly engaging in the unauthorized practice of law while employed with Glacial Energy from May 2011 to September 2013; (2) violating the prohibition on unauthorized practice, as well as 3 V.I.C. § 117, by engaging in the private practice of law while employed as an Assistant Attorney General; and (3) failing to amend his application for special admission filed in S. Ct. BA. No. 2009-0220 and his application for *pro hac vice* admission filed in S. Ct. BA. No. 2012-0106 when subsequent developments rendered his prior representations inaccurate. Although the EGC implicitly found that Motylinski had commenced his employment as an Assistant Attorney

---

[2] At the October 15, 2013 hearing, Motylinski testified that Glacial Energy terminated him as a result of "the whole mess with regards to V.I." and that he was told he "brought this on [him]self with Ohio." (Hr'g Tr. 131.) However, in a complaint filed against Glacial Energy in District Court on December 26, 2013, Motylinski alleges that Glacial Energy fired him because he could not be reached while taking leave under the federal Family and Medical Leave Act of 1993. Complaint at 5, *Motylinski v. Glacial Energy VI, LLC*, No. 3:13-cv-00127-CVG-RM (D.V.I. Dec. 26, 2013).

General prior to this Court granting his application for special admission, it did not explicitly state, on the record, that this conduct constituted the unauthorized practice of law.[3] As a sanction, the EGC concluded that this Court should impose a six-month stayed suspension as reciprocal discipline for the Ohio misconduct, but — since Motylinski is not a member of the Virgin Islands Bar — only impose a $1,500 fine and payment of costs as a sanction for all other misconduct.

This Court, in a December 12, 2013 Order, established a briefing schedule. In his January 2, 2014 response, Motylinski stipulates to committing the misconduct found by the Ohio Supreme Court, to violating ethical rules by failing to notify this Court of the Ohio Supreme Court's decision, and to violating 3 V.I.C. § 117. Motylinski, however, maintains that his violation of section 117 did not constitute the unauthorized practice of law, and that he did not engage in the unauthorized practice of law while employed by Glacial Energy. Although the EGC had found that Motylinski committed misconduct by failing to amend his special admission application, Motylinski does not address this claim in his brief, nor the EGC's finding that he commenced employment as an Assistant Attorney General before his special admission became effective. Likewise, Motylinski does not address the EGC's recommended sanction, although he requests that this Court show him leniency. Additionally, Motylinski states that he wishes to remain in the Virgin Islands notwithstanding Glacial Energy's decision to terminate him, and that he intends to sit for the February 2014 Virgin Islands Bar Exam to increase his employment prospects in the Territory.

The Office of Disciplinary Counsel filed its response on January 13, 2014. In that response, Disciplinary Counsel primarily summarizes the evidence that establishes the misconduct found by the EGC. Nevertheless,

---

[3] In her brief, Disciplinary Counsel argues that this Court should explicitly hold that Motylinski engaged in the unauthorized practice of law from July 2009 through October 2009, and sanction him accordingly, a request which Motylinski strenuously opposes. Because we agree with Motylinski that he never received notice, prior to the October 15, 2013 hearing, that this conduct would be considered as part of this proceeding, we decline to determine, as part of this proceeding, whether he engaged in the unauthorized practice of law prior to his special admission. *See* 4 V.I.C. § 443(c)(6) ("Every person whose conduct is investigated under this section shall be furnished with a written specification of the issues which are to be considered, and shall be given an opportunity to present evidence and be heard upon the specified issues.").

Disciplinary Counsel challenges the portion of the EGC's decision concluding that Motylinski cannot be disciplined for this misconduct. Specifically, Disciplinary Counsel identifies numerous cases in which a court has "suspended" or "disbarred" attorneys who are not admitted to practice in the jurisdiction, with the "suspension" or "disbarment" effectively serving as an injunction prohibiting the attorney from applying for admission to the bar. Based on these authorities, the Co-Chair of the EGC, in a January 16, 2014 filing, requests that this Court "suspend" Motylinski for no less than one year so as-to prevent him from sitting for the Virgin Islands Bar Exam in February 2014. Motylinski filed a consolidated response to both filings on January 20, 2014.

## II. JURISDICTION

■ As the highest court of the Virgin Islands, this Court possesses both the statutory and inherent authority to regulate the practice of law in the Virgin Islands. 4 V.I.C. § 32(e); *In re Rogers*, 56 V.I. 618, 623 (V.I. 2012). This authority encompasses jurisdiction over admission to the Virgin Islands Bar, *see In re Application of Shea*, 59 V.I. 552, 556 (V.I. 2013), including the power to determine whether *pro hac vice* admission should be granted, denied, or revoked. *See In re Admission of Alvis*, 54 V.I. 408, 416 (V.I. 2010). It also encompasses the power to discipline attorneys, *see In re Suspension of Adams*, 58 V.I. 356, 361 (V.I. 2013), and to adjudicate claims that an individual has engaged in the unauthorized practice of law in the Virgin Islands. *See In re Gonzalez*, 59 V.I. 862, 864-65 (V.I. 2013).

■ Thus, as explained in our March 14, 2013 Order, we may exercise jurisdiction over Motylinski both because he has filed an application for *pro hac vice* admission with this Court, and because much of the underlying ethical misconduct occurred while he served as a specially admitted member of the Virgin Islands Bar. *In re Motylinski*, 2013 V.I. Supreme LEXIS 10, at *7-8. Likewise, since the EGC has now concluded that Motylinski engaged in the unauthorized practice of law, we also possess jurisdiction pursuant to 4 V.I.C. § 443. *In re Rogers*, 57 V.I. 553, 558 (V.I. 2012).[4]

---

[4] Because a substantial portion of the ethical misconduct — including unauthorized practice of law — occurred while Motylinski was still a specially admitted member of the Virgin Islands Bar, our decision to refer this matter to the EGC, and not the Unauthorized Practice of Law Committee ("UPLC"), should not be construed as a departure from the rules applied

## III. LEGAL STANDARD

█ Typically, when considering a claim that an attorney has engaged in ethical misconduct in the Virgin Islands,

> we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually de novo, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*In re Disbarment of Rogers*, 60 V.I. 295, 303 (V.I. 2013) (quoting *V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008)). These same standards ordinarily apply when considering a claim that an individual — whether a member of the Virgin Islands Bar or not — has violated the statutory prohibition on unauthorized practice of law codified in section 443 of title 4 of the Virgin Islands Code. *In re Campbell*, 59 V.I. 701, 716-717 (V.I. 2013).

█ This case, however, is not exclusively an attorney discipline case, in that Motylinski's application for *pro hac vice* admission is also before us. The decision to grant or deny *pro hac vice* admission to the Virgin Islands Bar rests in the sound discretion of this Court. *In re Alvis*, 54 V.I. at 414; V.I.S.Ct.R. 201(a). Importantly, unlike an attorney discipline proceeding — where the Office of Disciplinary Counsel bears the burden of proving, by clear and convincing evidence, that misconduct occurred — in a bar admission case, it is the applicant who bears the burden of proving, by clear and convincing evidence, that admission to the Virgin Islands Bar is warranted. *In re Shea*, 59 V.I. at 556-557. Therefore, while

---

in *In re Campbell*, 59 V.I. 701, 707 n.1 (V.I. 2013), and *In re Rogers*, 57 V.I. at 564, in which we held that unauthorized practice of law allegations against members of the Virgin Islands Bar should be referred to the EGC while those lodged against non-members be referred to the UPLC.

Disciplinary Counsel bears the burden of proof with respect to whether Motylinski committed misconduct and, if so, the appropriate sanction, it is Motylinski who bears the burden of persuading this Court to admit him to the Virgin Islands Bar, *pro hac vice* or otherwise.

We apply a different standard, however, in cases where the highest court of another state or territory has already held that an attorney has committed ethical misconduct in that jurisdiction. Supreme Court Rule 203, which governs reciprocal discipline, provides that when another court has publicly disciplined an attorney,

> this court shall impose the identical discipline unless the respondent-attorney demonstrates, or this court finds, that upon the surface of the record upon which the discipline in another jurisdiction is predicated it clearly appears:
>
>> A. that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>> B. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duty, accept as final the conclusion on that subject; or
>> C. that the imposition of the same discipline by this court would result in grave injustice; or
>> D. that the misconduct established is deemed by this court to warrant substantially different discipline.

V.I.S.CT.R. 203(c)(4). If any of these elements exist, this Court may fashion an alternate order, as appropriate. However, "[i]n all other respects, a final adjudication in another court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this court." V.I.S.CT.R. 203(c)(5).

## IV. DISCUSSION

As explained above, the instant matter requires us to adjudicate, in varying contexts, numerous issues involving Motylinski's conduct between 2009 and 2013. We begin by considering whether to impose reciprocal discipline for the misconduct found by the Ohio Supreme Court, and then proceed to consider the new allegations of ethical misconduct that occurred in the Virgin Islands. Since we ultimately

conclude that reciprocal discipline is warranted and that Motylinski committed several instances of misconduct, we then consider the appropriate sanction to impose in light of the fact that Motylinski has not been a member of the Virgin Islands Bar since he separated from the Department of Justice on May 19, 2011.

## A. Reciprocal Discipline for Ohio Misconduct

■ In its December 7, 2012 Opinion, the Ohio Supreme Court held that Motylinski violated Ohio Rules of Professional Conduct 1.4(a)(4), 1.4(b), and 5.5(a), through his continued representation of Roth while he was on inactive status in Ohio and thus not authorized to practice law in that jurisdiction. These pertinent Ohio rules are substantially similar to Model Rules of Professional Conduct 1.4(a)(4), 1.4(b), and 5.5(a), which governed Motylinski's conduct in the Virgin Islands during the period in which he served as a specially admitted member of the Virgin Islands Bar.[5] In his brief, Motylinski admits that he violated these provisions. Since "a final adjudication in another court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this court," V.I.S.CT.R. 203(c)(5), and since Motylinski has failed to challenge any aspect of the Ohio proceedings in the brief filed with this Court, we agree with the EGC that reciprocal discipline is unquestionably warranted.

## B. Additional Misconduct in the Virgin Islands

The EGC adjudicated Motylinski guilty of numerous ethical violations separate and apart from the misconduct found by the Ohio Supreme Court. We address each claim in turn.

---

[5] Prior to February 1, 2014, Supreme Court Rule 203 provided that the ABA's Model Rules of Professional Conduct governed the conduct of members of the Virgin Islands Bar. However, effective February 1, 2014, Supreme Court Rule 211, which establishes the Virgin Islands Rules of Professional Conduct, governs the conduct of Virgin Islands attorneys. *See* Promulgation Order No. 2013-0001 (V.I. Dec. 23, 2013). Because all the conduct in this case occurred prior to February 1, 2014, we apply the Model Rules rather than Supreme Court Rule 211. *Cf. Brown v. People*, 54 V.I. 496, 512 n.10 (V.I. 2010) ("[S]ince Brown's trial concluded before the URE were repealed, this Court applies on appeal the evidentiary rules that were in effect at the time that Brown was tried in the Superior Court.").

### 1. *Failure to Amend Application for Special Admission*

The EGC concluded that Motylinski committed ethical misconduct through his failure to amend his July 9, 2009 application for special admission to the Virgin Islands Bar. Specifically, the EGC found that Motylinski placed himself on inactive status in Ohio on September 1, 2009, and did not amend his application to reflect that change in status, despite (1) having previously submitted a certificate of good standing from the Supreme Court of Ohio that he "is in good standing with the Supreme Court of Ohio; and is entitled to practice law in this state," (S. Ct. BA. No. 2009-0106, Ohio COGS 1), and having sworn that he would amend his application if any information subsequently changed. (NCBE Ques. 17.) *See* MODEL R. PROF'L CONDUCT 8.1(a) ("An applicant for admission to the bar . . . shall not . . . knowingly make a false statement of material fact."); 8.1(b) ("An applicant for admission to the bar . . . shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter . . . . "); 8.4(a) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."). According to the EGC's decision, as well as the arguments set forth by Disciplinary Counsel and the EGC in their respective briefs, Motylinski's failure to amend his special admissions application to notify this Court of his transfer to inactive status in Ohio may have been significant, since this Court may have denied the motion for special admission had this information been disclosed.

Motylinski does not respond to this portion of the EGC's findings in his brief. However, at the October 15, 2013 hearing, Motylinski presented the following defense when questioned by a member of the EGC:

> Q. Just one other thing. When you were specially admitted with the A.G.'s office, were you required to be — what were the requirements in terms of your other bar admission?
>
> A. We were supposed to be in good standing and we had to provide both at the time of the employ, but also I would say about a year into it, Attorney Wilson Campbell had also required that everybody, because one of the attorneys in the office had let his bar CLEs lapse and he was on administrative suspension. So it was just good standing.
>
> Q. But as an inactive attorney, you weren't active in any bar at the time you were specially admitted to the V.I. Bar?

■■■■■■■■■■■■■■■■■■■■■■■■

A. Right, but in good standing. I was in good standing, and they always required you show a good standing certificate and I have always provided it.

(H'rg Tr. 144-45.) Essentially, Motylinski took the position that an attorney who is in good standing with another jurisdiction's bar may qualify for special admission under Supreme Court Rule 202, even if the attorney lacks authorization to practice in that jurisdiction.

■ We agree with the EGC and Disciplinary Counsel that the intent of Supreme Court Rule 202 has always been for an attorney to remain an active member of the bar of another jurisdiction to qualify for special admission, for Rule 202(a) limits special admission only to individuals who are "admitted *to practice* in the highest court of a state, the District of Columbia or a commonwealth, territory or possession of the United States." V.I.S.CT.R. 202(a) (emphasis added). Motylinski, however, correctly notes that Rule 202(b) only requires that applicants for special admission "provide . . . current certificates of good standing bearing the original seal of the highest court from each jurisdiction in which he or she is admitted," V.I.S.CT.R. 202(b), a requirement which he interpreted as only requiring proof of good standing, and not authorization to practice.

■ ■ As this Court has previously explained, attorney discipline proceedings, while nominally civil, are quasi-criminal in nature. *In re Maynard*, 60 V.I. 446, 453 (V.I. 2014) (citing *In re Campbell*, 59 V.I. at 716). Therefore, the rule of lenity applies with equal force to attorney discipline matters. *See In re Haley*, 156 Wn.2d 324, 126 P.3d 1262, 1273 (2006) ("While the Rules of Professional Conduct are only 'quasi-criminal,' the rule of lenity applies to both criminal and quasi-criminal statutes.") (citations omitted). Under the rule of lenity, when the Court must interpret an ambiguous statute or court rule, "the rule dictates that 'ambiguity . . . should be resolved in favor of lenity [to the defendant].' " *Ward v. People*, 58 V.I. 277, 287 (V.I. 2013) (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S. Ct. 1056, 28 L. Ed. 2d 493 (1971)). Because Rule 202(a) provides that an applicant for special admission must be "admitted to practice," while Rule 202(b) merely requires that an applicant "provide . . . current certificates of good standing," we agree that Motylinski could have reasonably believed that an inactive member of the Ohio Bar could qualify for special admission so long as he was in good standing. Therefore, we decline to discipline Motylinski for his

failure to disclose, as part of his special admission application, that he had switched from active to inactive status in Ohio.[6]

### 2. *Private Practice of Law as Assistant Attorney General*

■ It is undisputed that Motylinski, while employed as an Assistant Attorney General, continued to represent Roth Industries between September 2009 and November 2009. Moreover, Motylinski admits that his conduct violated Virgin Islands law, in that section 117 of title 3 of the Virgin Islands Code provides that "[t]he Attorney General, Assistant Attorneys General and Deputy Assistant Attorneys General shall not engage in the private practice of law, nor be associated directly or indirectly with any attorney in private practice."[7] 3 V.I.C. § 117. Based on these undisputed facts, the EGC concluded that Motylinski violated (1) section 443 by exceeding the scope of his special admission, which permitted him to practice law in the Virgin Islands only in his official capacity as an Assistant Attorney General;[8] (2) Model Rule 8.4(c), prohibiting attorneys from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and (3) Model Rule 8.4(d), which prohibits an attorney from engaging in conduct prejudicial to the administration of justice. This Court has previously held that a violation of section 117 constitutes a violation of Model Rule 8.4. *See In re Suspension of Williams*, S. Ct. Civ. No. 2013-0054, slip op. at 1-2 (V.I. Aug. 9, 2013) (unpublished) (granting petition for discipline by consent and imposing suspension when respondent admitted to "maintaining a

---

[6] Nevertheless, having recognized the ambiguity in Supreme Court Rule 202, this Court has proposed an amendment, effective March 1, 2014, that specifies that active membership is required as a prerequisite to special admission. *See In re Amendments to Rules Governing Admission to the V.I. Bar*, S. Ct. Prom. No. 2014-0001, slip op. at 2 (V.I. Jan. 15, 2014).

[7] Similar statutory provisions prohibit the private practice of law by other attorneys employed by the Government of the Virgin Islands, *see, e.g.*, 4 V.I.C. § 288(b) ("No justice, judge, clerk of court, deputy, assistant or other officer or employee of a court shall practice law during his continuance in office or be in partnership with a practicing attorney."); 5 V.I.C. § 3526 ("Each Public Defender shall devote his full time to the discharge of his duties as such and shall not directly or indirectly engage in the private practice of law . . . .").

[8] In his reply, Motylinski again describes the EGC's finding that he engaged in the unauthorized practice of law in the Virgin Islands by exceeding the scope of his special admission as "yet another never before seen allegation." (Reply Br. 2.) However, this Court's March 13, 2013 Order specifically stated that Disciplinary Counsel had alleged that Motylinski "exceeded the scope of his special admission and violated Virgin Islands law by engaging in the private practice of law." *In re Motylinski*, 2013 V.I. Supreme LEXIS 10, at *8.

private immigration practice while employed as an Assistant Attorney General").

 Nevertheless, despite admitting to violating section 117, Motylinski contends in his brief that he did not commit any ethical misconduct. First, Motylinski contends that he "was not practicing Virgin Islands law or representing any client before a Virgin Islands court," (Motylinski Br. 2), apparently implying that his violation of section 117 should merge with the Ohio Supreme Court's finding that he violated Ohio Rule of Professional Conduct 5.5(a). We disagree. Section 117 does not provide that Assistant Attorneys General may not engage in the private practice of law in the Virgin Islands; it categorically bans the private practice of law, without imposing any geographic limitations on that prohibition. And while no Virgin Islands court has previously interpreted the scope of section 117, we cannot ignore that the Executive Branch has previously taken the position that the statute bans Assistant Attorneys General from engaging in the private practice of law in all jurisdictions, and not just the Virgin Islands. *See Manning v. Bouton*, 678 F.2d 13, 14-15, 19 V.I. 642 (3d Cir. 1982). Moreover, this Court has previously approved discipline in a case where the violations of section 117 did not occur in a Virgin Islands court, but in federal immigration court. *In re Williams*, slip op. at 1. Thus, the fact that Motylinski's conduct involved the representation of an Ohio client in an Ohio court is wholly irrelevant to the question of whether Motylinski violated section 117 — and thus Model Rule 8.4 — given that section 117 prohibits the private practice of law *anywhere*, not just in a Virgin Islands court. Moreover, Motylinski's violation of section 117 is independent of his violation of Ohio Rule 5.5(a). The Ohio Supreme Court found that Motylinski violated Model Rule 5.5(a) because he represented Roth while on inactive status, thus engaging in the unauthorized practice of law in Ohio. However, Motylinski would have violated section 117 even if he had remained an active Ohio attorney, for section 117 prohibits *all* private practice by Assistant Attorneys General. Thus, Motylinski's breach of section 117 is sufficiently distinct from his violation of Ohio Rule 5.5(a) so as to warrant separate discipline from this Court.

 We also reject Motylinski's alternate argument that a breach of section 117 does not constitute a violation of a statute regulating the legal profession. As noted earlier, this Court has already imposed discipline in other cases where an Assistant Attorney General has engaged in the

private practice of law in violation of section 117. *In re Williams*, slip op. at 1. Moreover, the prohibition on private practice of law by Assistant Attorneys General is not a mere internal policy established by the Department of Justice, *see Gov't of the V.I. v. Seafarers Int'l Union*, 57 V.I. 649, 652 (V.I. 2012); rather, it is a statute enacted by the Legislature that is among several providing that attorneys — such as public defenders and court employees — may not engage in the private practice of law while employed by the Government. *See, e.g.*, 4 V.I.C. § 288(a) ("No justice, judge, clerk of court, deputy, assistant or other officer or employee of a court shall practice law during his continuance in office or be in partnership with a practicing attorney."); 5 V.I.C. § 3526 ("Each Public Defender shall devote his full time to the discharge of his duties as such and shall not directly or indirectly engage in the private practice of law . . . ."). Moreover, the issue of whether section 117 does or does not regulate the legal profession is ultimately irrelevant, for an attorney need not violate a statute specifically governing lawyers in order to violate Model Rule 8.4. *See, e.g.*, *State ex rel. Oklahoma Bar Ass'n v. Burns*, 2006 OK 75, 145 P.3d 1088, 1093 (2006) (holding attorney's violation of statute prohibiting drunk driving constitutes conduct prejudicial to the administration of justice). Notably, Motylinski acknowledges that violations of section 117 may reduce public confidence in the judicial system, since he states that the statute is intended to prevent prosecutors "from being overburdened with private clients and to avoid conflicts between private clients and government clients." (Motylinski Br. 3.) Accordingly, we find no error with the EGC's analysis.

### 3. *Unauthorized Practice of Law — May 2011 to September 2013*

 We now turn to Motylinski's employment with Glacial Energy, which represented the primary focus of the parties' briefs and the October 15, 2013 hearing. In its decision, the EGC concluded that, based on the "corporate counsel" and "staff attorney" job titles, as well as testimony and other evidence pertaining to his actual duties, Motylinski repeatedly engaged in the unauthorized practice of law in violation of section 443.[9]

---

[9] The EGC also found that Motylinski's unauthorized practice violated Model Rule 8.4(d), in that the unauthorized practice of law is inherently prejudicial to the administration of justice. However, as we have previously cautioned, ethical rules should not be construed in such a way as to render every violation of one ethical rule — in this case, the prohibition on

 As a threshold matter, we reiterate our prior holdings that the pertinent provisions of Model Rule of Professional Conduct 5.5[10] have no applicability to this matter. As we previously explained, "section 443, and not Model Rule of Professional Conduct 5.5, defines the unauthorized practice of law in the Virgin Islands. Likewise, Supreme Court Rules 201, 202, and 204, and not Model Rule 5.5, govern admission to the Virgin Islands Bar." *In re Campbell*, 59 V.I. at 737. Importantly, while former Supreme Court Rule 203[11] provided that this Court "adopts the ABA's Rules of Professional Conduct" with respect to "the conduct of all attorneys who are admitted to practice before it," we have previously held that neither Model Rule 5.5 nor any of the other ABA Rules superseded the statutory definition of unauthorized practice found in section 443 with respect to non-members of the Bar, such as Motylinski. *Id.* at 711; *see also In re Gonzalez*, 59 V.I. at 864-65 (revoking *pro hac vice* admission and referring matter for proceedings when out-of-Territory attorney practiced law after *pro hac vice* admission was granted but before administration of Oath of Office).

 We recognize, of course, that at the time Motylinski engaged in this conduct, the relationship between Supreme Court Rule 203, section 443, and Model Rule 5.5 may not have been fully clear. *In re Campbell*, 59 V.I. at 737-38. However, as in *Campbell*, we find that the rule of lenity

---

unauthorized practice — a *per se* violation of a different ethical rule. *See In re Rogers*, 60 V.I. 295, 308 (rejecting argument that failure to participate in disciplinary proceedings, without more, violates Model Rule 3.4(c) because "[t]o hold that this same conduct violates Model Rule 3.4(c) would transform, without exception, every Model Rule 8.1(b) violation into a Model Rule 3.4(c) violation. . . .").

[10] Pursuant to this provision, "[a] lawyer admitted in another United States jurisdiction . . . may provide legal services on a temporary basis in this jurisdiction that . . . are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer . . . is authorized by law or order to appear in such proceeding *or reasonably expects to be so authorized.*" MODEL R. PROF'L CONDUCT 5.5(c)(2) (emphasis added). Model Rule 5.5 also provides that "[a] lawyer admitted in another United States jurisdiction . . . may provide legal services through an office or other systematic and continuous presence in this jurisdiction that . . . are provided to the lawyer's employer or its organizational affiliates [and] are not services for which the forum requires pro hac vice admission." MODEL R. PROF'L CONDUCT 5.5(d)(1).

[11] As noted earlier, effective February 1, 2014, Supreme Court Rule 203 was amended to remove the reference to the ABA's Model Rules of Professional Conduct and to instead provide that Supreme Court Rule 211, establishing the Virgin Islands Rules of Professional Conduct, governs the conduct of Virgin Islands attorneys. *See* Promulgation Order No. 2013-0001 (V.I. Dec. 23, 2013).

does not warrant dismissal of the unauthorized practice of law charges because Motylinski did not qualify for either of the safe harbors established under Model Rule 5.5, which require that the attorney be authorized to practice law in another jurisdiction, since during virtually all of his employment with Glacial Energy, Motylinski was not authorized to practice law *anywhere*. Except for a brief period in 2012, Motylinski was inactive in Ohio,[12] and thus not authorized to practice law in that jurisdiction. *Motylinski*, 983 N.E.2d at 1316. Likewise, Motylinski's testimony, as corroborated by the official attorney registration records of the State Bar of California, reveal that Motylinski was inactive in that state until 2013, and thus also ineligible to practice law. *See Warden v. State Bar*, 21 Cal. 4th 628, 88 Cal. Rptr. 2d 283, 982 P.2d 154, 157 (1999) (noting inactive members of the bar are unauthorized to practice law); CAL. STATE BAR. R. 2.30(B) ("No member practicing law, or occupying a position in the employ of or rendering any legal service for an active member, or occupying a position wherein he or she is called upon in any capacity to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law, shall be enrolled as an inactive member."). And, of course, Motylinski was not a member of the Virgin Islands Bar while employed at Glacial Energy. "Therefore, even if [Motylinski] believed Model Rule 5.5 applied to the exclusion of section 443, he should have known that his conduct violated that rule as well." *In re Campbell*, 59 V.I. at 738.

██ ██ We agree with the EGC that Motylinski violated section 443 several times during his employment with Glacial Energy. First, the record establishes that Motylinski held himself out as a licensed Virgin Islands attorney. While Motylinski is correct that no evidence was introduced that he ever "handed out a single business card, put [his] name on an office sign, advertised [him]self online or in a phone book . . . or corresponded with anyone socially or professionally where [he]

---

[12] At the October 15, 2013 hearing, it was established that Motylinski had transferred from inactive to active status sometime in 2012, and then transferred back to inactive status shortly after the Ohio Supreme Court issued its December 7, 2012 Opinion. As Motylinski explained at the hearing, the Ohio Supreme Court, in an August 25, 2011 Order in the Ohio disciplinary proceedings, had rejected a proposed offer to consent, in part, because it believed it was prudent "to wait to impose a sanction until [Motylinski] returns to active registration status." *Disciplinary Counsel v. Motylinski*, 129 Ohio St. 3d 1458, 2011 Ohio 4228, 951 N.E.2d 1052, 1052 (2011).

represented [he] was a Virgin Islands attorney," (Motylinski Br. 6), he testified at the October 15, 2013 hearing to being employed as Glacial Energy's "corporate counsel" and "staff attorney" as a member of the "Legal Department," and to using those titles in his communications with others:

Q. Who is Adam Gusman?

A. He was an attorney with Glacial, corporate counsel with Glacial. On the organizational chart he was listed as sort — he was corporate counsel. *I was called staff attorney.* So, yeah, he arguably was a supervisor of mine.

. . . .

Q. Where did you work on June 16, 2011?

A. Glacial Energy V.I., LLC.

Q. What was your title?

A. *I was corporate counsel.*

Q. Corporate counsel for whom?

A. Glacial Energy V.I. was my employer, LLC.

. . . .

Q. While you were working as corporate counsel for Glacial, did you use esquire or e-s-q behind your name?

A. I don't believe so.

Q. Did you use attorney?

A. *No. I think I always used corporate counsel.*

Q. Corporate counsel?

A. *I think, always.*

Q. So, you never referred to yourself as Michael Motlinsky [sic], Esquire?

A. I never really used that, I believe, but I can't say for any certainty. What date? Let me ask you that. What date are you referring?

Q. After you left the Department of Justice in the Virgin Islands.

A. Yeah, I think *I typically always would refer to myself just as Corporate Counsel, Glacial Energy.*

Q. Did you hold yourself out to the community as an attorney?

A. No. Just as — *well, as corporate counsel for Glacial.*

. . . .

645

Q. You were the staff attorney at Glacial?

A. Yes.

(Hr'g Tr. 29-30; 36; 54-55; 80 (emphases added).) The "staff attorney" title, like "Assistant Attorney General," inherently conveys authorization to practice law in the Virgin Islands. Additionally, we find the "corporate counsel" title indistinguishable from "general counsel" and "legal counsel," two titles which we have already held constitutes holding oneself out as a licensed attorney. *In re Coggin*, 49 V.I. 432, 434, 439 (V.I. 2008). Thus, Motylinski's acceptance and use of these titles alone is sufficient to establish that he engaged in the unauthorized practice of law in violation of section 443, *In re Campbell*, 59 V.I. 732-733, even if not coupled with any other misconduct. *See, e.g., Kentucky Bar Ass'n v. Brooks*, 325 S.W.3d 283, 289 (Ky. 2010) ("[H]olding oneself out as an attorney constitutes the unauthorized practice of law."); *State ex rel. Indiana State Bar Ass'n v. Diaz*, 838 N.E.2d 433, 447-48 (Ind. 2005) (finding that use of "notario publico" title by notary public providing immigration services, when such term in many Latin American countries refers to "a select class of elite attorneys," constitutes the unauthorized practice of law); *In re Trester*, 285 Kan. 404, 172 P.3d 31, 37 (2007) ("We have no qualms . . . saying that holding oneself out as an attorney in a state in which he or she has no license to practice law and giving the impression the attorney is authorized to practice law . . . engages in conduct that violates [the prohibition on unauthorized practice.]").

In any case, the evidence establishes that Motylinski did not just hold himself out as a licensed Virgin Islands attorney, but also performed acts that can only be permissibly done by a member in good standing of the Virgin Islands Bar. At the October 15, 2013 hearing, Motylinski discussed, at length, his duties at Glacial Energy:

Q. When you went to Glacial V.I., what were your job duties?

A. Primarily sort of whatever was directed from either Adam Gusman or Mike Giery, a lot of contract work. . . . Glacial Energy V.I., LLC is a management company. It means that it performs back office functions for another company called Glacial Energy Holdings, which is a stateside entity. It is a Nevada corporation, and Glacial Energy Holdings, along with its about 20 subsidiaries, all operate in various deregulated electrical markets. We do electricity and natural gas. There is the gas and electricity market. Essentially Glacial Energy V.I. had as

its one and only client, Glacial Energy Holdings, and we provided, again, advice for all the stateside entities as it related to natural gas markets and electricity markets. So, all of my work revolved around advising those entities, dealing with different regulatory matters that might come up, but primarily I was the one stuck doing the contracts. So, we were primarily a commercial enterprise, meaning we didn't supply energy to residential. That came later. When I was in the Legal Department, it was almost entirely commercial customers. So, warehouses, manufacturing companies, things like that, that's who we supplied electricity to. So, I was usually the one that would deal with the contract between Glacial Energy Holdings, actually not Glacial Energy Holdings, but the entity, whatever the entity was in a given state. If it was in Ohio, we had an Ohio entity. Glacial Energy in Ohio contracted with the Ohio customer. And so if that customer had special needs or special requirements, that's what I would do. I would draft a contract that met the needs of the two parties.

Similarly, there was a lot of filings to it. It is a highly regulated industry, both federal and state. So, if the state agency bid, consequently, the PUC, Public Utility Commission, would have a question or would be in need of reports internally, we would have to prepare a report. They would want to see the number of megawatts that we transmitted for the months of May, June and July and, you know — so, that will fall typically on legal to work with the other operations within the company to present that for the Public Utility Commission. So, that was the bulk of what I did.

. . . .

Q. So, as legal counsel, you said you provided them advice on other entities?

A. Right.

Q. Were those other entities affiliates, corporate affiliates?

A. They were all, yes. When you look at the holdings, all of its entities are by most legal definition considered affiliates of each other.

Q. And what kind of matter did you advise them about? Just the same things?

A. Yes.

Q. Regulatory matters?

A. Yes.

647

Q. Matters of contract?

A. Yes.

. . . .

Q. Does this description generally describe the duties you had as staff attorney?

A. Some yes; some no. Like, for example, bankruptcy, I don't think I touched any bankruptcy. It was always Adam Gusman.

Q. Eh-hmm.

A. I did draft contracts. I didn't do EDC or employment. And day-to-day legal needs, yes. I mean, I don't know what that means. That's vague.

. . . .

Q. As a part of . . . the regulatory compliance process, did you have opportunities to research the law in order to defend the companies or the holding company's position before those commissions?

A. If we ever got to the stage where we had to defend, we always hired local counsel. . . . Anytime it was — if it was just provide information, we would provide it. If it was, you know what, you guys look like you're in violation, we would — depends. I can't say that we never like made an argument. We would say, documents are here, look at page seven, this should answer it. If it came to a point where they would say, no, we think there are violations, we would hire local counsel. And that happened frequently. We would — and Adam is now like the regulatory guru of the company. He could talk even more about it. Again, it has been almost a year since I was in the Legal Department. So I don't know how it has changed, how duties have changed, but that's how it was when I was there.

(H'rg Tr. 48-51; 81; 129-30.) Additionally, during his direct examination of Gusman, Motylinski made a proffer that "the most important question today is whether or not [he] engaged in the practice of Virgin Islands law," and that he intended to demonstrate that "any legal services [he] might have been providing was for a U.S. company based on U.S. law." (H'rg Tr. 152-53.) Motylinski then elicited testimony from Gusman reiterating his earlier testimony that Glacial Energy simply provided "back office" support, including legal services, to various entities in the mainland United States.

We agree with the EGC that Motylinski engaged in the unauthorized practice of law. While Motylinski again emphasizes in his brief that he

provided services "for the Glacial Holdings entities in approximately 15 states" and that "[n]o evidence was presented that [he] advised any client, firm, person, or company on any Virgin Islands regulatory licensing issue," (Motylinski Br. 15), we again note that he performed these functions while holding himself out as a licensed Virgin Islands lawyer through use of the "corporate counsel" and "staff attorney" titles in the Virgin Islands. *See In re Campbell*, 59 V.I. at 732-33; *see also In re Application of Stage*, 81 Ohio St. 3d 554, 1998 Ohio 338, 692 N.E.2d 993, 996 (1998) (holding Florida attorney not admitted in Ohio engaged in unauthorized practice of law by accepting "General Counsel" title when employed as in-house counsel). And as explained in greater detail above, for a substantial portion of his employment as "corporate counsel" and "staff attorney," he was not authorized to practice law in Ohio, California, or any other jurisdiction. Consequently, to the extent Motylinski implies that this Court should turn to the unauthorized practice of law rules of some other jurisdiction rather than relying on section 443, the argument lacks merit, since for most of the pertinent time period he was not permitted to provide legal services to anyone in any state or territory.

█ Likewise, we find that Motylinski's description of his day-to-day duties at Glacial Energy also establish that he engaged in the unauthorized practice of law. As we have previously held, the practice of law is not limited exclusively to litigation, but encompasses all "matters implicating the rights and remedies of clients." *In re Campbell*, 59 V.I. at 733 (quoting *In re Jackman*, 165 N.J. 580, 761 A.2d 1103, 1106-07 (2000)). As noted above, Motylinski admitted at the October 15, 2013 hearing that much of his work as "corporate counsel" and "staff attorney" involved drafting contracts for various entities affiliated with Glacial Energy. We agree with the numerous courts that have held that drafting contracts for a company constitutes the practice of law, and therefore rises to the level of unauthorized practice when done by an individual not permitted to practice law. *See, e.g., Disciplinary Counsel v. Troller*, 138 Ohio St. 3d 307, 309, 2014 Ohio 60, 6 N.E.3d 1138 (2014); *Utah State Bar v. Petersen*, 937 P.2d 1263, 1267-68 (Utah 1997); *In re Conduct of Devers*, 328 Ore. 230, 974 P.2d 191, 195 (1999). Furthermore, we agree that Motylinski, by preparing reports for Glacial Energy entities with the knowledge that they would be filed with pertinent regulatory agencies and otherwise ensuring that various legal requirements were satisfied, violated the prohibition on "the preparation and/or filing of pleadings or other

legal papers incident to any action or other proceeding of any kind."[13] 4 V.I.C. § 443(a); *see also Hipwell v. Kentucky Bar Ass'n*, 267 S.W.3d 682, 683 (Ky. 2008) (noting that ensuring compliance with Securities and Exchange Commission and New York Stock Exchange requirements constituted the practice of law). Accordingly, we agree with the EGC that Motylinski engaged in the unauthorized practice of law while employed by Glacial Energy.[14]

### 4. Failure to Amend Application for Pro Hac Vice Admission

 Finally, we turn to the incident that first brought all of the above issues to this Court's attention: Motylinski's failure to amend his *pro hac vice* application after the Ohio Supreme Court issued its December 7, 2012 Opinion imposing a six-month stayed suspension. The EGC concluded that Motylinski violated Model Rules 8.1(a) and 8.1(b); since the application asked "Have you ever been disbarred or suspended, from practicing law in any jurisdiction(s)?" the EGC determined that his failure to amend his answer from "No" to "Yes" was dishonest and tantamount to failing to correct a now-false statement of material fact. In his brief, Motylinski — contrary to his initial position on the matter — admits that he "had a duty to disclose that fact to the Virgin Islands Supreme Court" since "the Virgin Islands Supreme Court was still relying on [his]

---

[13] In his brief and deposition testimony, Motylinski also analogized some of his work to that of a paralegal or a legal secretary. However, as noted above, Motylinski did not hold himself out as a "paralegal" or "legal secretary" when performing these tasks; rather, he used the job titles "staff attorney" and "corporate counsel," which, regardless of his actual job duties at Glacial Energy, conveyed that he was a licensed Virgin Islands attorney. Additionally, even had Motylinski not held himself out as a licensed attorney, we question the validity of the contention that the work he did perform — particularly with respect to the *Sorber* matter — does not fall within the meaning of "the doing of any act by a person who is not a member in good standing of the Virgin Islands Bar Association for another person usually done by attorneys-at-law in the course of their profession." 4 V.I.C. § 443(a).

[14] Since we find that Motylinski engaged in the unauthorized practice of law while employed by Glacial Energy, we need not determine whether he also engaged in the unauthorized practice of law with extent to the *Sorber* matter, given that the *Sorber* conduct occurred while Motylinski was already engaged in the unauthorized practice of law through his job title and day-to-day duties. Moreover, while the EGC did not specifically itemize its requested $1,500 consolidated fine, we interpret the fine as representing (1) a $500 fine for commencing employment as an Assistant Attorney General prior to his special admission, a charge which we have dismissed due to lack of notice; (2) a $500 fine for exceeding the scope of his authorization to practice law while specially admitted; and (3) a $500 fine for his unauthorized practice at Glacial Energy.

response from the Questionnaire which stated [he] was not suspended," and that his conduct violated Model Rule 8.1.[15] (Motylinski Br. 3.) In light of Motylinski's stipulation, we accept the EGC's findings.

## C. Sanctions

Having concluded that reciprocal discipline for the Ohio misconduct is warranted and that Disciplinary Counsel established, by clear and convincing evidence, that Motylinski committed additional misconduct in the Virgin Islands, we now must determine an appropriate sanction. Given that the Office of Disciplinary Counsel has met its burden, it naturally follows that Motylinski cannot meet his burden of proving, by clear and convincing evidence, that this Court should exercise its discretion to grant him *pro hac vice* admission to the Virgin Islands, and we accordingly deny the application. And because Motylinski does not challenge any aspect of the Ohio Supreme Court's discipline order, which we presume represents the appropriate reciprocal discipline, V.I.S.CT.R. 203(c)(4), we find no reason not to impose a six-month stayed suspension as a sanction for his Ohio misconduct. Therefore, the sole issue before this Court is what sanction to impose on Motylinski for his Virgin Islands misconduct.[16]

---

[15] In addition, although not mentioned by the EGC in its decision, we note that Motylinski also failed to submit an accurate *pro hac vice* application in another respect, in that he failed to disclose that he had been admitted to the State Bar of California, resulting in this Court granting the *pro hac vice* motion without requiring him to submit a certificate of good standing from the California Supreme Court.

[16] As noted earlier, in its decision, the EGC — apparently acting *sua sponte* without the benefit of briefing on the issue — simply stated that "[Motylinski] is not a member of the Virgin Islands Bar" and that "[a]s a consequence suspension is not an available sanction for the misconduct described above." (Dec. 4.) In its brief, the Office of Disciplinary Counsel, relying on case law from other jurisdictions, argued that the EGC's conclusion is incorrect, and — after reviewing Disciplinary Counsel's brief — the EGC now concedes in its brief that this Court could suspend or disbar Motylinski for his Virgin Islands misconduct. *See* V.I.S.CT.R. 207.1.2(b)(1) (providing that a respondent "may be . . . any formerly admitted attorney with respect to acts committed prior to resignation, suspension, disbarment or transfer to inactive status"); *see also People v. Hooker*, 318 P.3d 77, 79 (Colo. 2013) (unpublished); *In re Tonwe*, 929 A.2d 774, 776 (Del. 2007); *In re Van Son*, 403 S.C. 170, 742 S.E.2d 660, 661 (2013); *Att'y Grievance Comm'n of Md. v. Kimmel*, 405 Md. 647, 955 A.2d 269, 272 (2008); *Ky. Bar Ass'n v. Yocum*, 294 S.W.3d 437, 440 (Ky. 2009); *Lawyer Disciplinary Bd. v. Lakin*, 217 W. Va. 134, 617 S.E.2d 484, 486 (2005).

■ As we have previously held, the duty not to engage in the unauthorized practice of law is a serious ethical duty, *In re Rogers*, 60 V.I. at 310, as is the duty that an attorney provide truthful information in conjunction with a bar admissions application. *See, e.g., In re Shea*, 59 V.I. 552, 562-63; *In re Stamps*, 874 So. 2d 113, 121 (La. 2004). Additionally, we can only conclude that much, if not all, of Motylinski's misconduct was willful and knowing. Having both been prosecuted for the unauthorized practice of law in Ohio and serving as a key witness in the *Campbell* unauthorized practice of law proceeding in the Virgin Islands, *see* 59 V.I. at 720, Motylinski, perhaps more so than most other individuals, should have been aware of the prohibition on unauthorized practice of law. Motylinski also could not erroneously have believed that Model Rule of Professional Conduct 5.5 excused his conduct, given that for much of the time in which he engaged in unauthorized practice in the Virgin Islands, Motylinski was not authorized to practice law in *any* United States jurisdiction. *Id.* at 737. And Motylinski's actions clearly resulted in injury, in that the unauthorized practice of law resulting in a *per se* injury to the legal profession. *See In re Rogers*, 60 V.I. at 310. Further, had Motylinski disclosed to this Court that he had been disciplined by the Ohio Supreme Court, it is highly likely that this Court would have outright denied his application for *pro hac vice* admission. Therefore, we conclude that a suspension represents the appropriate baseline sanction for his misconduct. *In re Joseph*, 56 V.I. at 505.

■ As to the fourth *Brusch* factor — the existence of aggravating and mitigating factors — we conclude that an upward departure from the baseline sanction is warranted. Motylinski possesses a prior history of discipline; in addition to the misconduct found by the Ohio Supreme Court in its December 7, 2012 Opinion, we note that the Ohio Supreme Court also previously sanctioned him and ordered him to pay $750 for his failure to comply with mandatory continuing legal education requirements. *See In re Administrative Actions Dated December 29, 2011*, 130 Ohio St. 3d 1505, 2011 Ohio 6770, 959 N.E.2d 2, 2 (2011). Moreover, Motylinski acted with a dishonest or selfish motive, in that he engaged in the unauthorized practice of law for pecuniary gain and failed to disclose information to this Court to avoid jeopardizing his applications for special and *pro hac vice* admission. Additionally, as outlined above, Motylinski engaged in a pattern of misconduct spanning several years,

which also involved multiple violations of different ethical rules. And while Motylinski maintains that he cooperated with Disciplinary Counsel and the EGC, we decline to view this as a mitigating factor, given that Motylinski actively concealed much of the underlying misconduct from this Court and only began to cooperate after its discovery.

Given the presence of numerous aggravating factors and the absence of any mitigating factors, we conclude that a one-year suspension from the practice of law represents the appropriate sanction for Motylinski's Virgin Islands misconduct, to be served concurrently with the six-month stayed suspension imposed as reciprocal discipline for the misconduct found by the Ohio Supreme Court. Because Motylinski is no longer a member of the Virgin Islands Bar, his suspension shall have the effect of precluding any application for regular, special, or *pro hac vice* admission during this one-year period of suspension and, rather than applying for reinstatement, *see* V.I.S.CT.R. 203(h), he shall be required to demonstrate his good moral character and fitness to practice law in conjunction with any future application to the Virgin Islands Bar, in accordance with Supreme Court Rule 204. We also enjoin Motylinski from engaging in any activity in the Virgin Islands that could constitute the practice of law until and unless he attains Virgin Islands Bar membership, impose a consolidated $1,000 fine for the two documented instances of unauthorized practice of law, and direct him to reimburse the EGC for the costs associated with this proceeding.

## V. CONCLUSION

For the foregoing reasons, we deny the application for *pro hac vice* admission, suspend Motylinski from the practice of law for one year and enjoin any further unauthorized practice, impose a $1,000 fine, and direct payment of costs. We also direct the Clerk of the Court to transmit a copy of this Opinion to the Supreme Court of Ohio and the Supreme Court of California.